## Inhabitants of GREENE *vs.* Inhabitants of WINDHAM.

The residence of the wife is evidence of the domicil of the husband; but it is not conclusive; if he has abandoned her, or she has abandoned him, he may establish his domicil elsewhere.

Whoever removes into a town for the purpose of remaining there for an indefinite period, thereby establishes his domicil in that town.

A change of domicil is not effected by an intention to remove, until that intention is carried out, by an actual removal.

The domicil of a man depends upon the place where he does actually reside, and not upon the place where his legal or moral duties call upon him to reside.

The wife has by law derivatively the settlement of her husband; and this rule operates so long, as the marriage tie remains undissolved.

THIS was an action of assumpsit for the support of a pauper named *Alice Wade.* The question in dispute was, where was the legal settlement of the pauper, which was alleged by the plaintiffs to be in *Windham.* The pauper was legally married to *John Wade* on the 4th of *November*, 1816, at the house of her father, *Timothy Wright,* in *Lewiston.* It was proved, that after the marriage, they removed to *Greene,* about three miles distant, and lived together and kept house two or three months, when they disagreed, and she went to her father's in *Lewiston,* complaining of an illicit cohabitation of her husband with another woman; that said *Wade* went to various places and finally to *Freeport,* where the form of a marriage took place between him and one *Sally Miller;* that he lived a few months in *Freeport,* and then went with her and carried a small supply of furniture to *Cumberland,* and from thence, in *December,* 1820, to *Windham,* and there dwelt in a house which he had permission to occupy and cohabited with her there until the spring following after the 21st of *March,* 1821.

The defendants called a witness, who testified, that he knew *Wade's* wife at the time of the marriage, and while they lived together in *Greene;* that *Wade* went off and never returned; and that the wife went to her father's in *Greene.* They also called her father and mother, who testified, that when *Alice* returned, the cause she alleged was the misconduct of her husband; that she claimed a bed and quilt after her return, being the same

she had claimed before her marriage ; that she always continued to reside in *Lewiston*, or in *Greene*, adjoining towns, from that time until the commencement of this action : and that *Wade*, her husband, never returned to his wife, nor made any communication to her, nor furnished her with any thing for her support.

The counsel for the defendant requested the Judge to give the following instructions to the jury.

1. That if they should find, that said *John Wade*, on the 21st of *March*, 1821, had a lawful wife in *Greene*, or *Lewiston*, with a portion of his furniture, and that she was living in one of those places at that time ; that by law his home would be where his wife and furniture were.

2. That he would not acquire a legal home in *Windham* unless he went there for the purpose of a permanent residence.

3. That if he entertained that intention at one time, still if he abandoned it before *March* 21, 1821, he would not, under the facts assumed in the first request, gain a settlement by force of the statute of that date.

4. That if *Wade* left his wife by reason of his own misconduct, and not that of his wife, it was his legal duty to return to her, but that it was not her duty to follow him, and that his home would so depend upon his legal obligations.

5. That if they should find, that said *Wade* left his wife without any legal cause, and they continued ever after to live separate, that the said *Wade's* wife might have acquired a legal settlement in the town in which she resided on the 21st of *March*, 1821, although her husband was not resident there.

*Weston C. J.*, before whom the trial was had, *upon the first point*, instructed the jury, that the residence of *John Wade's* lawful wife, with such of his furniture as had been left with her, if any, would furnish evidence that his home or domicil remained in the same place ; but if he had abandoned her, and they had finally separated, his home might by law be in a different place.

*Upon the second ;* he instructed them, that if he went to reside at *Windham* for an indefinite period, and if when he established himself there, he had no intention of going elsewhere, *Windham* would become his home.

*Upon the third ;* that if he there-afterwards came to a resolution to remove from *Windham* prior to the 21st of *March*, 1821, his domicil would not be changed, until he carried such resolution into effect.

*Upon the fourth ;* that his home, within the meaning of the pauper law, did not depend upon any legal obligation he might be under to return to his lawful wife.

The Chief Justice declined to give *the fifth instruction* requested ; but stated to the jury, that the wife would by law have derivatively the settlement of her lawful husband.

The verdict was for the plaintiffs ; and was to be set aside and a new trial granted, if the instructions withheld ought to have been given, or those which were given were erroneous.

*F. Allen,* for the defendants, contended, that the instructions, requested at the trial, ought to have been given, and that those which were given were erroneous and prejudicial to the rights of the defendants ; and cited the following authorities in support of his argument.

1st. request. *Richmond* v. *Vassalborough,* 5 *Greenl.* 396.

2d. *Knox* v. *Waldoborough,* 3 *Greenl.* 445.

3d. He referred to both the cases before cited.

4th. To the ruling of the late Chief Justice, in *Raymond* v. *Harrison,* where the parties were said to have submitted to the *correctness of the ruling, and settled according to it.* This request is founded on that ruling.

*Wells,* for the plaintiffs, said, that as the jury, under the in-instructions of the Court, had found a verdict for the plaintiffs, the only question was, whether there was any thing against law in the giving or withholding of instructions. He argued, that in each particular the Court was right ; and cited these authorities. 1st instruction right. *Richmond* v. *Vassalborough,* cited on the other side ; *Westbrook* v. *Bowdoinham,* 7 *Greenl.* 363 ; *Greene* v. *Buckfield,* 3 *Greenl.* 136. 3d. instruction. *Hallowell* v. *Saco,* 5 *Greenl.* 143. 4th. Is a man's domicil where he ought to live or where he does live ? 5th. *Stat. ch.* 122, § 2 ; *Dixmont* v. *Biddeford,* 3 *Greenl.* 205 ; *Hallowell* v. *Gardiner,* 1 *Greenl.* 92.

Greene v. Windham.

The opinion of the Court, after a continuance, was drawn up by

WESTON C. J. — The residence of the wife is evidence of the domicil of the husband; but it is not conclusive. If he has abandoned her, or she has abandoned him, he may establish his domicil elsewhere. *Dixmont* v. *Biddeford*, 3 *Greenl.* 205. Whoever removes into a town, for the purpose of remaining there for an indefinite period, thereby establishes his domicil in that town. It is not necessary that he should go, with a fixed resolution to spend his days there. He might have in contemplation many contingencies, which would induce him to go elsewhere. Some persons are more restless in their character, and migratory in their habits than others, but they may and do acquire a domicil, wherever they establish themselves for the time being, with an intention to remain, until inducements may arise to remove.

A change of domicil is not effected, by an intention to remove, until that intention is carried out, by an actual removal. *Hallowell* v. *Saco*, 5 *Greenl.* 143. If it was the moral or legal duty of the husband, to abandon the illicit connexion he had formed, and to return and be reconciled to his lawful wife; he did not think proper to submit to what duty required; for the jury must be understood to have found, under the instruction they received, that he had finally separated from and abandoned his wife. Domicil does not depend upon legal or moral duties of this character. In *Richmond* v. *Vassalborough*, 5 *Greenl.* 396, it is said by the late Chief Justice, that "the Court do not look to the virtues of a pauper or of his wife, in ascertaining the place of his legal settlement."

The wife has by law derivatively the settlement of her husband; and this rule operates, so long as the marriage tie remains undissolved. To decide otherwise, would be a departure from an express provision of the statute, in relation to paupers.

We are satisfied with the correctness of the instructions, ·given at the trial; and that the Judge was legally warranted in withholding such as were requested.

*Judgment on the verdict.*