## Hindman's Appeal.

1. In this country a person's domicile is that place in which he has fixed his habitation, without any present intention of removing therefrom.

2. A mere intention to remove permanently without an actual removal works no change of domicile; nor does a mere removal from the state without an intention to reside elsewhere. But when a person sells all his land, gives up all his business in the state in which he has lived, takes his movable property with him and establishes his home in another state, such acts prima facie prove a change of residence. Vague and uncertain evidence cannot remove the legal presumption thus created.

3. The determination of domicile depends not upon proving particular facts, but whether all the facts and circumstances, taken together, tending to show that a man has his home or domicile in one place, overbalance all the like proofs tending to establish it in another.

[Hindman's Appeal.]

4. Where an auditor reports facts directly proved by the witnesses his report is entitled to great weight; but when the fact is simply a deduction from other facts reported by him, his conclusion is the result of reasoning and is subject to revision and correction by this court if error is discovered therein.

November 12th 1877.  Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeal from the Orphans' Court of *Washington county*: Of October and November Term 1877, No. 64.

This was the appeal of Samuel Hindman, administrator of the estate of George Hindman, deceased, from the decree of the court confirming the report of the auditor appointed to make distribution of the estate of said decedent.

The facts will be found fully stated in the opinion of this court.

The only question raised by the assignments of error was that of the domicile of George Hindman at the time of his decease, which the auditor found was in Virginia, and accordingly reported that the distribution of the estate should be made in conformity with the intestate laws of that state.  This report the court, Acheson, P. J., confirmed, and from this decree this appeal was taken.

*D. F. Patterson* and *John A. Campbell*, for appellants.—While the findings of fact by an auditor will only be set aside for plain error, yet when his conclusions are supported by false deductions from the facts this court will review and correct the error : Phillips's Appeal, 18 P. F. Smith 130.  The facts found by the auditor, and set out in his report, clearly show that there was no question before him involving the credibility of witnesses, and hence no peculiar weight is to be attached to his finding.

As to what is domicile : Story's Conflict of Laws, § 43 ; Carey's Appeal, 25 P. F. Smith 205 ; Guier *v.* O'Daniel, 1 Binn. 349 ; Bruce *v.* Bruce, 1 American Leading Cases 890 ; Ennis *v.* Smith, 14 Howard 423 ; 20 Curtis 263.

What constitutes a change of domicile : Guier *v.* O'Daniel, *supra ;* Evans *v.* Smith, *supra ;* Greene *v.* Windham, 13 Maine 225 (1 American Leading Cases 889) ; Sears *v.* The City of Boston, 1 Metc. 250 ; Inhabitants of Wilbraham *v.* Inhabitants of Ludlow, 99 Mass. 587 ; Harris *v.* Firth, 4 Cranch C. C. 710 ; Inhabitants of Hampden *v.* Inhabitants of Levant, 59 Maine 557 ; Carey's Appeal, *supra.*

The declarations of the decedent are not competent evidence upon the question of his abandonment of his West Virginia domicile, except such declarations as accompanied and characterized the act of removal.  The weight to be given to such declarations depends altogether upon circumstances.  If the acts of the party are in manifest conflict with his declarations, his intention must be determined by his acts : Butler *v.* Farnsworth, 4 Wash. C. C. 101 ; Butler *v.* Hopper, 1 Id. 499 ; Holmes *v.* Greene, 7 Gray 297 ;

Bruce *v.* Bruce, *supra ;* Carey's Appeal, *supra;* Story's Conflict of Laws, § 45.

*Braden & Miller,* for appellee.—Domicile is a question of intention. Our courts in this country have all held substantially that we may travel from state to state, staying as long as we desire in each, without losing our domicile, provided we do not intend to become citizens of the states visited. The question is one of fact, not of law. West Virginia was the domicile of the decedent's origin, and it must be regarded as his domicile until he has acquired another; not only acquired another, but manifested and carried into execution an intention of abandoning his original domicile, and taking that other as his sole domicile : 2 Williams on Ex'rs 1086 (ed. 1841) ; Somerville *v.* Somerville, 5 Vesey 787 ; Guier *v.* O'Daniel, *supra.*

Mr. Justice MERCUR delivered the opinion of the court, January 7th 1878.

All the assignments of error relate to the question of the place of George Hindman's domicile, at the time of his death ; they will therefore be considered together. Vattel defined domicile to be a fixed residence, with an intention of always staying there. This definition is too limited to apply to the migratory habits of the people of this country. So narrow a construction would deprive a large proportion of our people of any domicile. The better definition is, that place in which a person has fixed his habitation, without any present intention of removing therefrom : 1 Bouv. Law Dic. 499 ; Story's Confl. of Laws, § 43 ; Putnam *v.* Johnson *et al.* 10 Mass. 488 ; Greene *v.* Windham, 13 Maine 225 ; Carey's Appeal, 25 P. F. Smith 201.

The evidence in this case shows that George Hindman was born in Brooke county, West Virginia, where he resided till 1869. Then he moved on a farm which he had purchased in Hancock county, of the same state. There he resided until March 1871. He then sold his farm, which was all the real estate he owned, and went to live with his brother-in-law, McClurg, in Washington county, Pennsylvania. He never married, and had no family. His property was all in personal estate. He took with him a horse, a box containing his notes, bonds and valuable papers. Soon afterwards he brought his other horse to McClurg's, leaving in Virginia only some farming implements of little value. He continued to live with McClurg, paying his board, and there made his home until April 1872. He then went to live with Gibson, another brother-in-law, in Washington county, taking with him his box, a bureau, clock and table. There he continued to live until the time of his death, 22d June 1872. All these facts appear by the evidence and by the auditor's report, and are uncontradicted. Although he thus

[Hindman's Appeal.]

resided, and made his home in this state for about fifteen months, and died here, yet the auditor and court below, found that he was domiciled in West Virginia at the time of his death. They appear to have reached this conclusion, from his declarations made while he was residing in Pennsylvania.

The evidence shows that after he thus removed from West Virginia, he at different times made visits to friends in that state, yet he always returned to the room which he retained at the house of his brother-in-law in Pennsylvania. Here was his property and his home. He had no house, no residence, no property, no family in the state from which he had moved. When he sold the farm on which he had lived, he gave up possession and removed therefrom. He thereby gave up that domicile. He then made no new abode, and established no other residence in that state. He gathered up his property, and with it departed, and located in another state. This unequivocal act of moving from the state and taking up his residence in another state, is very strong evidence of the establishment of a domicile in the latter. Its effect is not destroyed by his expressed and indefinite intention to go back into West Virginia at some future time and there buy land. Nothing less than a present intention to retain his domicile there would prevent its transfer to the state into which he moved. He did not come into Pennsylvania for his health, or as a traveller, nor for any other particular business of a temporary nature. No person can have more than one domicile at the same time in regard to succession to personal property: Abington v. North Bridgewater, 23 Pick. 170.

It is true that a domicile once gained remains until a new one is actually acquired, *facto et animo;* Story on Conflict of Laws, § 47. The fact and intention must concur, yet the former may prove the latter. A mere intention to remove permanently, without an actual removal, works no change of domicile; nor does a mere removal from the state, without an intention to reside elsewhere. But when a person sells all his land, gives up all his business in the state in which he had lived, takes his movable property with him and establishes his home in another state, such acts prima facie prove a change of domicile. Vague and uncertain evidence cannot remove the legal presumption thus created : Story on Conflict of Laws, § 46 ; Wilbraham v. Ludlow, 99 Mass. 587 ; Harris v. Firth, 4 Cranch C. C. 710.

The evidence of Hindman's declarations shows he had a fickle and uncertain mind. Sometimes he expressed an intention to buy a farm in Brooke county, at other times, in Hancock county, then in Washington county ; sometimes complaining of the collateral inheritance tax of Pennsylvania, and declaring that he did not want to become a citizen of this state, but would go back and make Virginia his home, and that he never intended to pay any tax in this state. He refused to be assessed or registered, and did not vote

in Pennsylvania.   It, however, does not appear after he moved here, that he was either assessed or registered in West Virginia, or voted there.   Soon after paying his taxes, the 1st of November 1871, assessed against him in Virginia prior to his sale, he said to Gardner it was the last tax he ever expected to pay in Virginia, and soon thereafter declared he did not want land, as he could do better with his money than by farming.   Again, in January 1872 he said to Samuel Hindman that he wanted no more land, and would make his home in Pennsylvania.   After this he again talked of buying land in Virginia.   Without giving more of the evidence in detail, the whole of it tends to show that he gave up his domicile in West Virginia and acquired one in Pennsylvania; that at first he intended to purchase a farm, and wherever that should be, to go and reside on it.   While he talked of purchasing in each state, yet his preference appeared to be in favor of one in Virginia. He seems to have avoided all assessments and all taxes everywhere, for the time he lived in Pennsylvania.   He made no purchase anywhere.   As time ran on he became less desirous of purchasing land.   During the last two or three months of his life, he made no mention of land.   As he had only indicated an intention of returning to Virginia in connection with his purchasing land there, when he ceased to talk about the purchase of land; he said no more about returning to Virginia.   It was said in Abington *v.* North Bridgewater, *supra*, "it depends not upon proving particular facts, but whether all the facts and circumstances taken together, tending to show that a man has his home or domicile in one place overbalance all the like proofs, tending to establish it in another."

Applying this rule, which we believe a correct one, we think all the facts and circumstances proved clearly preponderate in favor of his domicile in Pennsylvania.   The conclusion to which we have arrived, must not be understood as changing the rule in regard to the force to be given to an auditor's finding of facts.   When he reports facts directly proved by the witnesses, his report is entitled to great weight.   But when the fact is simply a deduction from other facts reported by him, his conclusion is the result of reasoning, the correctness of which we are as competent to judge as he. We will therefore review such result, and correct it if we discover error therein: Phillips' Appeal, 18 P. F. Smith 130 ; Moyer's Appeal, 27 Id. 482.

The learned judge erred in the effect he gave to the declarations, followed by no corresponding action changing the domicile.   The distribution must be made according to the intestate laws of Pennsylvania.

> Decree reversed and record remanded, with instructions
> to decree distribution conformably with this opinion.