## Hunnings *v.* Hunnings, Appellant.

*Husband and wife—Desertion by husband—Bill in equity for main-tenance—Domicile of wife—Act of May 23, 1907, P. L. 227.*

1. Where a resident of Pennsylvania goes to another state, becomes domiciled there, marries and afterwards deserts his wife, and the wife subsequently comes to the former domicile of her husband in Pennsylvania merely for the purpose of finding her husband, she cannot maintain a bill in equity under the Acts of May 23, 1907, P. L. 227, and April 27, 1909, P. L. 182, for maintenance out of her husband's estate, unless she shows by her acts and declarations that she had abandoned her domicile in the other state and established a new domicile in Pennsylvania.

2. Domicile does not depend on any particular fact, but upon whether all the facts taken together tend to establish the fact of a fixed, certain and permanent residence; a special or temporary purpose is not sufficient.

Argued May 14, 1913.    Appeal, No. 134, April T., 1913, by defendant, from decree of C. P. Allegheny Co., Jan. T., 1908, No. 924, on bill in equity in case of Bertha A. Hunnings v. Edward R. Hunnings.    Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.    Reversed.

Bill in equity by a wife against husband for maintenance.    Before SHAFER, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree in favor of the complainant.

*George H. Quaill,* for appellant.—There was no such domiciliary residence in the county of Allegheny and state of Pennsylvania, on the part of plaintiff at the time she filed her bill, December 14, 1907, as to give the court jurisdiction under the facts in this case: Dorsey v. Dorsey, 7 Watts, 349; Hollister v. Hollister, 6 Pa. 449; Barning v. Barning, 46 Pa. Superior Ct. 291; Fulford v. Fulford, 38 Pa. C. C. Rep. 142.

We do not legislate for persons beyond our jurisdiction, for those residing outside of our state. Our exemption and other laws are for the benefit of our citizens solely: Collom's App., 12 W. N. C. 309; Yelverton v. Burton, 26 Pa. 351; McCarthy's App., 68 Pa. 217; Deni v. Penna. R. R. Co., 181 Pa. 525; Curtis v. Curtis, 200 Pa. 255; Dock v. Cauldwell, 19 Pa. Superior Ct. 51; Fulford v. Fulford, 38 Pa. C. C. Rep. 142.

*W. H. S. Thomson,* of *Thomson & Thomson,* with nim *John W. Dunkle,* for appellee.—The court had jurisdiction: Barnes v. Com., 11 W. N. C. 375; Com. v. Hart, 12 Pa. Superior Ct. 605; Com. v. Thatcher, 38 Pa. C. C. Rep. 137; Com. v. Tragle, 4 Pa. Superior Ct. 159; Keller v. Com., 71 Pa. 413.

OPINION BY ORLADY, J., October 13, 1913:

This defendant resided in Allegheny county from infancy until he was of mature years, when, in 1898 he removed to California, and has never returned to this state. On May 13, 1905, at Redlands, California, under the assumed name of Edward R. Hunter, he was married to this plaintiff. Their subsequent relations are narrated by her, to be as follows: On May 14, they went to Los Angeles, the next day to San Francisco, where they remained for two weeks, then to Stockton for six weeks, and then to Fresno, where they remained until October 1, when they went to Randsburg, at which place the husband left the wife to go to Lindsey in search of work. All of these places are in California, and their unsettled living was due to the fact that each was a laborer, he being a stage driver and the wife a cook. Since the separation at Randsburg the parties have not met, though they exchanged letters until December 26, of that year. The parting was amicable because he had to have work and the wife sent his clothing after him.

On October 3, 1907, the wife removed to Bellevue, in

Allegheny county, of this state, and on December 14, following, lodged this bill of complaint, under the provisions of the Act of May 23, 1907, P. L. 227, and on August 18, 1909, she filed an amended bill under the provisions of the Act of April 27, 1909, P. L. 182. The prayer being to direct a seizure and sale or mortgage of sufficient of the estate of Edward R. Hunnings as will provide the necessary funds for her maintenance and for general relief.

Service was had by publication as provided by the Acts of April 6, 1859, P. L. 387, and May 23, 1907, P. L. 227, when the defendant appeared and made defense by his attorney in  fact. The cause was regularly proceeded in by taking testimony and hearings and resulted in a final decree, providing that the sum of $1,300 of the proceeds of real and personal estate, then in the hands of a trustee appointed by the court, be seized, etc.

This action is founded on the two acts of 1907, and 1909, infra, which latter act provides, sec. 1, "That if any man shall separate himself from his wife without reasonable cause, and, being of sufficient ability, shall neglect or refuse to provide suitable maintenance for his said wife, such wife shall be and is hereby empowered to bring her action, at law or in equity, against such husband for maintenance, in the court of common pleas of the county where the desertion occurred, or where she is domiciled; and the said court shall have power to entertain a bill in equity in such action, and shall make and enforce such orders and decrees as the equities of the case demand, . . . ."

It is not pretended that the alleged desertion occurred in the county of Allegheny in this state, or that the husband did not leave this state in perfect good faith for the purpose of establishing his domicile in California, where he has continually resided since 1898.

The right of the wife to maintain this action turns on the interpretation to be given to the words, "or where

she is domiciled" in the light of her own testimony. She had an undoubted domicile with her husband in California and that domicile continued until October 3, 1907, when she came to this state. When asked, "Q. Why didn't you stay in California?" She replied, "Because I wanted to see where my husband was, and what he meant by treating me as he did. Q. You came here to hunt him up? A. Yes, sir, because I didn't think he would go any place else but here. Q. Didn't Mrs. Sarah M. Hunnings write to you to come on? A. I had written to her first, that I would come, and she had also written for me to come if I wished. She thought that if I would stay there, I might find him there, but I didn't stay and came on of my own accord."

When her quest for her husband failed on her arrival, two months later (December 14), she instituted this proceeding to seize and sell the property that he had inherited from his mother. In the intervening time, she stayed in the home of Mrs. Sarah M. Hunnings as a servant in the family. "She paid me $2.00 per week and I went out nursing and worked by the day." Her situation is not changed if we follow her to the time of filing the amended bill August 18, 1909. She described her life by saying that she remained at Mrs. Hunnings in Bellevue for ten months after her arrival, and afterward she was working around as a house servant, nurse, laundress, waitress, restaurant helper and keeping a rooming house, for periods ranging from a few weeks to six months duration, in New Brighton, Beaver, Ambridge and Beaver Falls in Beaver county, and at several places in Allegheny county. She changed her occupation and length of stay at any place as she altered her mind in regard to employer or location. These latter changes are of importance chiefly as evidence of her lack of domiciliary intent, and can only be construed to be but temporary sojourns for a special and particular purpose, in and out of Allegheny county. The record does not show any intention to surrender

or abandon the California domicile, or to not resume it as soon as her avowed purpose of coming to this state is accomplished. The farthest she goes in this direction is, "Q. So you have been working around here for yourself ever since? A. Yes, sir. Q. Are you going to stay here now? A. Yes, sir." This is too indefinite to determine a domicile in the light of her unsettled and irregular manner of living, at different places, within and without the county, as these incidents of living around, directly contradict the idea of a fixed and permanent abode in the county of Allegheny which is essential, to give the court below jurisdiction to hear and decide her complaint. The words, "where she is domiciled" have a legal meaning and weight, and whatever of difference there may be in the definitions given of the word domicile, by text writers and the courts, all agree, that the fundamental and controlling requirement is, an intention to abandon a former domicile and to establish a true, fixed and permanent abode, to which, whenever one is absent there is a continuing intention of returning to it. Two things must concur—the fact of residence, and the intention of remaining. The original domicile continues until it is fairly changed for another. Mere taking up a residence is not sufficient, unless there be an intention to abandon a former domicile and establish a new one: 1 Bouvier's Law Dict.; 10 Am. & Eng. Enc. of L., Title, Domicile, and annotations from a great number of our state courts. At most her testimony is vague and uncertain in regard to the facts about which the law requires definiteness and accuracy. Domicile does not depend on any particular fact, but upon whether all the facts taken together tend to establish the fact of a fixed, certain and permanent residence, a special or temporary purpose is not sufficient: Price v. Price, 156 Pa. 617; Hindman's Appeal, 85 Pa. 466.

On her own showing, her purpose in coming to this state and her stay in any part of it was indefinite as to

location and duration, depending entirely upon the success or failure of her finding her husband, and her testimony shows a lack of the essential elements in establishing a "true, fixed and permanent domicile." The learned court below erred in holding otherwise.

It is not necessary to decide whether the defendant is within the meaning of the words "absent himself from the commonwealth" as used in the second section of the act of 1909, or the form of the decree in regard to payment to the plaintiff of the whcle sum mentioned. We confine our decision to the lack of necessary proof of her domicile in Allegheny county to give the courts of that county jurisdiction of her cause.

The decree of the court below is reversed and the bill dismissed.