## Flaherty's Estate.

*Domicile—Presumption of continuance—Intent to change.*

1. The domicile of origin continues until the presumption arising therefrom is overcome by unmistakable evidence of an intention to change it.

2. Where decedent, who had been domiciled in Philadelphia until she was thirty-seven years of age, went to New York City eleven months before her death to accept employment in the New York office of her employer, because she did not get on satisfactorily with the Philadelphia manager, and remained there until her death, the evidence, taken as a whole, failing to show either a new domiciliary intent or a definite intention to return to this city, Philadelphia remained her legal domicile, and on her death her will was properly probated in this county.

Exceptions to adjudication *sur* appeal from decree of Register of Wills admitting will of decedent to probate. O. C. Phila. Co., April T., 1923, No. 1406.

HENDERSON, J., Hearing Judge, Sept. 21, 1925.—This is an appeal from the decree of the Register of Wills admitting to probate the last will of Cecelia Flaherty, a single woman. The petition alleges that the decedent was not domiciled in Philadelphia at the time of her death, but in the State of New York.

It appears that the decedent was killed at Grand Central Depot in New York on Sept. 17, 1921. She left a will dated "New York City, New York, February 23, 1918," in the first paragraph of which she described herself as "of Philadelphia, State of Pennsylvania."

The decedent was born in this city thirty-eight years ago, and had resided in Pennsylvania all her life. For some years prior to her death she was a clerk in the employ of William J. Burns Detective Agency. She owned a house at Narberth, in which she lived with her mother until the latter's death sometime about 1918. After the mother's death, the decedent leased the property to Osborne H. Graves, whose tenancy still continues, and she then became a lodger in a house at Broad and Dickinson Streets, Philadelphia; she then took a room with Miss Catharine M. Hoerr, at No. 1542 Wallace Street, Philadelphia, where she lived from March, 1919, to June, 1920. She then took a room at the house of Mrs. Edward C. Logan, at No. 1904 Girard Avenue, Philadelphia, where she lived until October, 1920, at which time, due to some friction in the Burns office in Philadelphia, she was transferred to the New York office of that agency, and while there lived as the guest of Mr. and Mrs. Burns, at their home at Scarborough-on-the-Hudson, until the time of her death.

The decedent's family consisted of the mother, who died in 1918, and her two sisters, Mrs. Susan R. Conkling, the appellant, and Mrs. William E. Shea, now deceased, who left surviving her a husband and two children, one of whom testified at the hearing.

In September, 1920, the decedent had registered for the purpose of voting from No. 1904 Girard Avenue, and when so registering she had stated that she was a clerk, a lodger at No. 1904 Girard Avenue, and had resided in Pennsylvania all her life. The records of the County Commissioners' office

Flaherty's Estate.

were produced and show that she was assessed in 1920 from No. 1904 Girard Avenue; the Philadelphia Directory for 1921 contains her name as a clerk, residing at No. 1904 Girard Avenue.

When going to New York she took with her a trunk and a suit-case containing her personal effects, and sent other personal property, including a Victrola and table, to be stored in the house at Narberth belonging to her and rented by Osborne.

While in New York she retained the bank account at the Market Street National Bank, in which she continued to make deposits and withdrawals; she also continued her account with the Philadelphia Saving Fund Society, and maintained her stock in building and loan associations situated in this city; she also retained her safe deposit box at the Market Street National Bank. Her mother was buried in Philadelphia.

She made two visits to Philadelphia; upon which occasions she called at her house at Narberth, saw her nephew, John W. Shea, called on Mrs. Logan, at No. 1904 Girard Avenue, and consulted with Mr. Merker, of the Market Street National Bank.

The appellant called several witnesses, who testified that, while the decedent went to New York as a temporary change of residence and business connection, she had learned to like her changed surroundings and that she was very happy with her old friends Mr. and Mrs. Burns, with whom she was living. She wrote to her nephew, stating that it was more like home than any place. Her stay in New York had continued for nearly a year, and at the time of her death she had no plans for returning to Philadelphia and was looking for an apartment in New York City, as she disliked riding in the subway; and it should be added that she did not maintain a residence in that city.

Appeals from the register involving a question of domicile are governed by the same rules as if the issue were one of *devisavit vel non:* Price *v.* Price, 156 Pa. 617. I must, therefore, determine whether, upon the testimony adduced, a verdict in favor of the New York domicile could be sustained.

Pennsylvania was the domicile of origin, and the presumption of a continuation of this domicile must be indulged until the appellant by "unmistakable evidence" (Narr's Estate, 1 D. & C. 786) shows the intention of the decedent to adopt New York as a domicile of choice.

No length of time is needed to acquire a new domicile—it may be done over night; and, on the other hand, no length of absence, even for years, will change a domicile without an intention so to do.

One may go to another jurisdiction and set up a home, but unless a new domiciliary intent is shown, the domicile of origin will persist.

The decedent had undoubtedly set up a residence in New York, but I am unable to find any intent to change her domicile. She was very happy in her new home; she said it was like home to be with her friends, the Burnses, and it is also true that she had no definite plans for returning to Pennsylvania; but no one could safely draw the conclusion from such facts of a change of domiciliary intention. It is true that she left no established residence in Pennsylvania, no place to which she could immediately return, but no inference could properly be drawn from that fact, because she had been a mere lodger since her mother's death and undoubtedly could not have afforded to retain a room which she could not use. The house which she owned at Narberth was rented, so that she could not immediately at any time return there.

It was argued that there must have been a change in her domiciliary intent because she had given up her room in Philadelphia, and it may be, on her

return, would dwell in her house at Narberth. It should be pointed out, however, in such a case as this, the question of domicile is not one as between Philadelphia and Scarborough-on-the-Hudson, or between Narberth and Scarborough-on-the-Hudson, but rather one between Pennsylvania, the jurisdiction of her citizenship, on the one hand, and the State of New York, on the other. Her citizenship could cling to either Philadelphia or Narberth, but in either case it is a citizenship of the Commonwealth of Pennsylvania.

It is also true that she went to New York with the intention of being there but a short time. One witness says for a month, and instead of the absence being of so short a duration, she remained for eleven months, and at the time of her death had no plans for returning; but, as was above remarked, no length of absence, even for years, would warrant me in indulging the presumption of the acquisition of a new domicile.

It is also true that she was unmarried, and, hence, had no immediate family to bring her back to Philadelphia; but her collateral relatives were here, her mother was buried here and she maintained all her business connections here, such as her banking account, safe deposit box and building and loan association connections. It is true that she was making her livelihood in New York, but in no sense could it be said that her livelihood compelled her to remain there. One witness testified that she at one time had thought of returning to Philadelphia to again take up a position at Hoskins.

I have reached the conclusion that, upon the testimony adduced, a verdict in favor of a New York domicile could not be sustained, and, hence, the appeal is dismissed and the record is remitted to the Register of Wills.

The petition for leave to appeal from the Register did not pray for an issue, and, under objection, an amendment was filed adding such a prayer. I received and filed this amendment and had the testimony warranted it, I would have awarded an issue as prayed for in the amendment.

*David Levinson* and *George C. Klauder*, for exceptions.

*Leon J. Obermayer* (of *Edmonds & Obermayer*), contra.

VAN DUSEN, J., Oct. 30, 1925.—Decedent's domicile of origin was Pennsylvania. Here she lived and worked, owned real estate and kept her savings. Her living relatives and the grave of her mother were here. Her residence in Pennsylvania for the first thirty-seven years of her life and until eleven months before her death is unquestioned. Then she was transferred to the New York office of her employer because of inability to get on with the new manager of the Philadelphia office, and was a guest in the household of her employer and his wife, who were warm personal friends, until her death. She made no more permanent connection in New York than this. Witnesses, interested and disinterested, testified to declarations that she regarded her New York employment as temporary and that she intended to return to Philadelphia, taking another position, if necessary. Other witnesses testified to declarations, not so definite, tending to show the contrary.

"The domicile of origin continues until the presumption arising therefrom is overcome by unmistakable evidence of intention to change it:" Narr's Estate, 1 D. & C. 786. It is the duty of this court to determine whether the testimony showing an intention to change domicile is sufficient to support a verdict to that effect; and in the instant case we think such testimony insufficient. The eleven months' sojourn in New York is so well explained by undisputed circumstances that we cannot regard it as offering "unmistakable" proof of change, or even raising sufficient question to be worthy of submission to a jury. The declarations alleged to support the New York residence are

Flaherty's Estate.

not of great value and are overborne by the declarations to the contrary; and the acts of the decedent, with their undisputed attendant circumstances, are more weighty than her declarations: Clee v. Clee, 2 D. & C. 199; Reed v. Reed, 59 Pa. Superior Ct. 178, 181; Hindman's Appeal, 85 Pa. 466.

The exceptions are dismissed.