## SHREVEPORT LONG LEAF LUMBER CO., Inc., v. WILSON.

### Civil Action No. 362.

District Court, W. D. Louisiana, Shreveport Division.

May 2, 1941.

630

Hunter & Hunter, of Shreveport, La., and Wilkinson, Lewis, Wilkinson & Naff, of Shreveport, La., for plaintiff.

Campbell & Campbell, of Minden, La., for defendant.

PORTERIE, District Judge.

The defendant has filed a motion to dismiss on the ground that there is not the necessary diversity of citizenship, since he is a citizen of Louisiana, and the plaintiff is a corporation chartered under the laws of the state of Louisiana.

There is much conflict in the considerable body of evidence furnished at the trial of the motion as to whether or not the defendant is a resident of Louisiana or of Arkansas. It is practical, therefore, before reaching the consideration of the evidence in this opinion, to determine with which side rests the burden of proof—whether it remains constantly with the plaintiff who has sought our jurisdiction in the filing of the suit, or whether it rests with the defendant who urges the want of diversity in his motion.

Without citing the supposed variations in our jurisprudence, which probably arose because of the multifariousness of the factual situations, we come directly to the case of McNutt et al. v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135, wherein Chief Justice Hughes, as the organ of the court, engages in a detailed comparative study of the apparently conflicting jurisprudence, and finally concludes for the benefit of the bench and bar with the clarifying pronunciation: "* * * The question is upon which party lay the burden of proof. Respondent contends that the burden of proving the lack of jurisdiction rests upon the party challenging the jurisdiction and cites decisions of this Court to that effect. The question is thus sharply presented." 298 U.S. at page 181, 56 S.Ct. at page 781, 80 L.Ed. 1135.

After engaging in a discussion of the applicable articles of the Judicial Code and the decisions thereunder from the year 1875 to the year 1936, the paragraph of summation is as follows:

"* * * The act of 1875 prescribes a uniform rule and there should be a consistent practice in dealing with jurisdictional questions. We think that the terms and implications of the act leave no sufficient ground for varying rules as to the burden of proof. The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence. We think that only in this way may the practice of the District Courts be harmonized with the true intent of the statute which clothes them with adequate authority and imposes upon them a correlative duty." (298 U.S. at pages 188, 189, 56 S.Ct. at page 785, 80 L.Ed. 1135.)

See KVOS v. Associated Press, 299 U. S. 269, 57 S.Ct. 197, 81 L.Ed. 183.

Therefore, we find that the burden is with the plaintiff to show its right to our jurisdiction by the preponderance of the evidence, even though the issue was raised by the defendant in his motion to dismiss.

Wilson's citizenship in Arkansas precedes that in Louisiana, and we subscribe to the presumption that a legal domicile once gained continues until another is clearly and legally acquired. This rule is subordinate to, however, and does not change the dominant rule of the burden of proof just expressed.

The next thing at law to determine is the meaning of the word "citizen" as used in the statute conferring jurisdiction on federal courts in cases "between citizens of different states."

From 25 C.J., verbo Federal Courts, Sec. 60, p. 748, we quote: "Citizenship, with respect to the jurisdiction of the federal courts, has the same meaning as domicile, and imports permanent residence in a state with an intention of remaining. Residence alone is not the equivalent of citizenship; and citizenship in a particular state is not lost by absence therefrom, where the intention to return remains, even though such absence is protracted."

"Domicile is the test of citizenship for the purpose of the jurisdiction of the courts of the United States." Bjornquist v. Boston, etc., R. Co., 1 Cir., 250 F. 929, 933, 163 C.C.A. 179, 5 A.L.R. 951, certiorari denied 248 U.S. 573, 39 S.Ct. 11, 63 L.Ed. 427.

See, also, Simkins' Federal Practice, Sec. 86, p. 119; Delaware, etc., R. Co. v. Petrowsky, 2 Cir., 1918, 250 F. 554, 162 C. C.A. 570, certiorari denied 247 U.S. 508, 38 S.Ct. 427, 62 L.Ed. 1241.

"Citizenship" and "domicile" are synonymous. Domicile in its common meaning is residence at a particular place plus the intention of remaining at that place permanently or for an indefinite length of time. A more legally technical definition is found in 19 C.J., verbo Domicile, Sec. 1, p. 392: "Domicile is the relation which the law creates between an individual and a particular locality or country. It is the legal conception of home. The word 'domicile' is derived from the Latin 'domus', meaning a home or dwelling house, and no one word is more nearly synonymous with 'domicile' than the word 'home', which is almost always used in defining or describing the legal concept of domicile. In a strict legal sense, the domicile of a person is the place where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning."

The following quotation from the case of Greene v. Windham, 13 Me. 225, 228, is very much in line, as the facts of the case will show: "Whoever removes into a town, for the purpose of remaining there for an indefinite period, thereby establishes his domicil in that town. It is not necessary that he should go, with a fixed resolution to spend his days there. He might have in contemplation many contingencies, which would induce him to go elsewhere. Some persons are more restless in their character, and migratory in their habits than others, but they may and do acquire a domicil, wherever they establish themselves for the time being, with an intention to remain, until inducements may arise to remove."

We find that declarations made by a party as to his domicile when part of the res gestae, prior to the institution of a suit, are admissible, even when objected to because of their self-serving character. "Declarations—a. Oral. Oral declarations made by the party whose domicile is in dispute, as to the intent with which removal was accomplished, when part of the res gestae, are admissible in evidence in a contest to which he is a party. The declaration must have been made at a time when the party had no intention to make evidence and before any controversy." 19 C.J. verbo Domicile, Sec. 60. See also Gardner v. O'Connell, 5 La.Ann. 353. Our decision in this case would not be different even if all the evidence of this character were to be excluded, because the sum total of it is merely corroborative of facts which are otherwise preponderantly proved by evidence of unquestioned admissibility.

We now have to declare what were the main facts proved to the satisfaction of the court by the preponderance of the evidence.

We find that the defendant for more than a year prior to the date of this suit was a resident of Springhill, Louisiana, maintaining an apartment in the upper

story of the Wilson building (owned by him). He lived and slept in the apartment and devoted his full time to the sale of used cars in Springhill, a town where recently a large paper mill, employing hundreds of laborers, had been located. The testimony of the defendant is that he definitely and positively had decided to make his home at Springhill as early as August or September of 1939; that though his wife remained in their former home at Truman, Arkansas, he had no intention of ever returning to Arkansas to live. Through a number of other witnesses it was proved that Wilson had remained at Springhill continuously for more than a year of this suit; that he had moved his own furniture and all of his personal belongings from Arkansas to this apartment; that prior to August, 1939, at which time he came to reside at Springhill, he sold a recreation parlor that he had owned and operated in the town of Jonesboro, Arkansas, and also sold another recreation parlor he had owned and operated in the town of Truman, Arkansas; that his wife remained in the old home because she had been a successful teacher of music for many years in the town of Truman and both husband and wife had agreed that she should continue in that work.

We find the further facts to be that at Springhill, Lousiana, defendant purchased properties from which he was receiving rent and over which he watched, in addition to his main business of selling used cars, and that he also was agent for the sale of one make of automobile; that his bank account in Truman, Arkansas, was closed, the last withdrawal being in March, 1940; that concurrently a bank account was opened by the defendant at Springhill, Louisiana; that during the years 1939-1940 the defendant took steps to qualify as a voter in Louisiana, signing the poll books in Louisiana for the years 1939 and 1940 and registering at the registrar's office of Webster parish on July 29, 1940. It was proved that in making his declarations to vote, defendant Wilson stated under oath that he was a citizen of Louisiana and a resident of Springhill, Webster parish; further, that the defendant actually voted in Louisiana three times in 1940.

On March 14, 1940, several months prior to the date of this suit, defendant applied for and obtained the homestead exemption on that portion of the Wilson building occupied by him as a homestead. This application contained a declaration under oath of residence and citizenship in Louisiana. Further proof is that the assessor of the parish of Webster called on Wilson and verified the fact of his occupancy of the homestead; that in a deed of purchase of real estate dated March 28, 1940, defendant declared himself to be a resident of Webster parish, Louisiana; that, during the years 1939 and 1940, defendant orally declared to numerous friends and associates at the time of dealing with them —reputable and responsible citizens of Arkansas and of Louisiana, all of whom testified in person at this trial—that he was making his home in Louisiana. These declarations made on separate occasions and under different circumstances show a freedom of scheme and design and were all made at a time not suspicious. Gardner v. O'Connell, supra.

It was testified that the defendant's wife, when her school was out in the summer of 1940, came to Springhill, Louisiana, spending the entire summer vacation period with her husband and living in his apartment on the second floor of the Wilson building; that while in Louisiana with her husband she too signed the poll book preparatory to becoming a voter in Louisiana; that the defendant did not claim tax exemption for either one of the years 1939 or 1940 on any of his property in Arkansas, not even on the lot and home which was partly occupied by his wife; that all of his former home was rented out with the exception of the one room occupied and used by Mrs. Wilson as a studio in connection with her profession; that both Mr. and Mrs. Wilson had been trying for months to sell the remainder of their property in Arkansas.

On the other hand, we find the following facts, by the preponderance of the evidence, to be proved by plaintiff seeking this jurisdiction: That Wilson, in a suit instituted against him by plaintiff in the state court in 1938, at trial thereof on April 5, 1939, under oath, declared that he lived in Truman, Arkansas; that Wilson and his wife still own the house formerly occupied by them as a home in Arkansas and that Mrs. Wilson still remains there; that Mr. Wilson went to Arkansas in August, 1940, and voted in the democratic primary election held there; that Mr. Wilson was assessed a poll tax in Arkansas for 1939; and finally that Wilson was

assessed with personal taxes in Arkansas for the years 1939 and 1940, and that the Board of Equalizers acted thereon and raised his personal property assessment from $350 to $400.

Though the above facts are proved and true, the court is impressed with the following detracting circumstances as to each, which prevent their overturning the previous facts, once the principles of law are applied:

▉ During the trial of the suit in the state court it is obvious that Wilson had not yet fully determined to make Louisiana his home. His final intention to remain and live in Louisiana had not yet been formed. Although at that time he had moved to Springhill, his intention to remain permanently or for an indefinite length of time was still dependent upon how his new business undertaking there would succeed. Springhill as an industrial center was still in the making. The trial of the state suit was in April of 1939. The preponderance of the evidence shows that by September 13, 1940, the date of filing of this suit, which is the date to use to decide this case, he not only then resided at Springhill but by then his intention was definitely made to remain in Louisiana permanently. In truth, it was as early as August or September of 1939 that he became firm in his decision to remain permanently at Springhill.

The court sees nothing on the point made that the wife remained to teach in Arkansas at the old home.

We now reach the fact that Wilson voted in Arkansas as late as August of 1940. We should make the differentiation here between the right of voting and what is a legal domicile in connection with citizenship requirements of a civil action in the federal courts. Wilson appears to be of the type interested in politics, having taken an active part in elections. It is true that he voted during the year 1940 in elections in both states; in Louisiana, in January, September and November; in Arkansas, on August 27th, and he had offered to vote on August 13th.

The last poll tax he paid in Arkansas was that for the year 1939; in truth, payment was permitted for the 1938 poll tax by the laws of that state to be made in 1939. According to the law of Arkansas, as it existed at the time of the payment of the 1938 tax, this payment only entitled him to vote in any election held prior to June 30, 1940; however, by an act of the Arkansas Legislature subsequently enacted, the period during which a holder of a 1938 tax receipt could vote was extended from June 30, 1940, to September 1, 1940, so as to permit the holders of 1938 tax receipts to vote in the August primaries. Mr. Wilson frankly stated on the witness stand that he believed he was entitled to vote in Arkansas on that poll tax receipt though he had acquired the right to vote in Louisiana.

Technically, he might not have had the right to vote in Louisiana in 1940 because he did not have the poll requirement for 1938; he had the poll requirement for 1939 and 1940, and did vote in 1940. Section 2, Article VIII, La.Const. of 1921. Wilson was in good faith in that particular.

The very same day he testified in the state lawsuit that he was a resident of the state of Arkansas (April 5, 1939) he went to the sheriff's office in the same courthouse and signed the poll book for 1939. There is not the inconsistency here that would, at first blush, be indicated. He could still truthfully and legally be a resident of Arkansas for suit purposes but be beginning to comply with the two-year requirement as to poll-book registry to vote in Louisiana, so that should he become a resident of Louisiana later he would qualify as a Louisiana voter without delay. We cannot see how the political inconsistencies caused by legal voting requirements could control the decision in this case, involving citizenship requirements in a civil action.

Under the laws of Arkansas it would seem that the fact that Mr. Wilson was assessed a poll tax for 1939 is an indication that he had made a declaration of domicile for such assessment. Mr. Wilson's explanation of that declaration is that he owned two recreation parlors which he desired to sell and the privilege of selling beer therein in 1939 and 1940 was dependent upon the owner being a poll-tax payer. He thus kept his beer permit and maintained the sale value of the two parlors (we have previously shown that he finally disposed of these by sale). He testified that when he was assessed the tax he stated to the deputy tax assessor that this rendition was to protect his beer

permit, telling the assessor at the time that he was living in Louisiana.

■ ·On the last point, as to the assessment of personal property in the state of Arkansas for the years 1939 and 1940, we agree with the contention made that the situs of personal property for taxing purposes is that of the domicile of the owner and that ordinarily the rendition, assessment and payment of taxes on personalty would bring the domicile of the owner into question. Really what occurred in Arkansas is that the prevailing practical method was followed in that the taxing authorities assessed all the personal property of Wilson physically present within the limits of the state of Arkansas and gave no consideration to the actual domicile of Mr. Wilson.

For the above reasons, because of the facts and the law applicable thereto, we rule that the defendant was a resident and citizen of Louisiana at the time of filing of the complaint against him. The burden was upon the plaintiff, and it has failed.

Accordingly, the motion to dismiss for lack of jurisdiction is sustained and judgment will be signed accordingly when presented.