## KVOS, INC. *v.* ASSOCIATED PRESS.

No. 28. Argued November 11, 1936.—Decided December 14, 1936.

Mr. *William H. Pemberton,* with whom *Mr. Clarence C. Dill* was on the brief, for petitioner.

Mr. *John W. Davis,* with whom *Messrs. William C. Cannon, Harold W. Bissell,* and *Clinton W. Howard* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This suit was brought to enjoin petitioner, the proprietor of a radio station at Bellingham, Washington, from appropriating, using, or disseminating news gathered by the respondent or its members during the period such news has commercial value to respondent and its members. The prayers were for temporary and permanent relief. The district court directed the petitioner to show cause why an injunction should not be granted and entered a temporary restraining order.

In summary, the allegations of the bill follow.

Respondent is a New York corporation and petitioner a Washington corporation; "the damage to which com-

plainant is being subjected . . . is in excess of the sum of Three Thousand ($3000.00) Dollars, exclusive of interest and costs, and the amount involved herein and in controversy herein is in excess of said sum of Three Thousand ($3000.00) Dollars, exclusive of interest and costs."

The respondent, a membership corporation, is composed of proprietors or representatives of newspapers published throughout the United States whose business is the gathering, by its own instrumentalities, and by exchange with members, and other means, news, intelligence, and information from all over the world for the benefit of its members, and distribution of the material so gathered amongst them for newspaper publication, conformably to the by-laws.

The respondent has representatives in every important capital and city in the world and has reciprocal arrangements for interchange of news with many important agencies in foreign countries; has more than twelve hundred members, each owning or representing a daily newspaper, each supplying respondent, as required by the by-laws, with the news gathered locally by the newspaper he represents; the cost of respondent's transactions, amounting yearly to many millions of dollars, is equitably divided among the members; the association's service to members is of financial and business importance to them, due to its promptness, accuracy, and impartiality; the by-laws require that the news furnished shall remain confidential until publication has been fully accomplished by all members.

The petitioner conducts a radio station at Bellingham, Washington, and, as part of its daily broadcast, sends out, three times a day, morning, noon, and evening, what is styled "The Newspaper of the Air" in which petitioner announces what it claims to be, and what usually is, the leading and most interesting news of the day. The Bellingham Herald, published at Bellingham, is a member of

the association and, under the by-laws, the respondent is entitled to be furnished by the Herald with all the news from the territory served by that paper; the Seattle Post Intelligencer and the Seattle Daily Times are published at Seattle, Washington, and are represented by memberships in the association which has the same rights to news gathered by those papers.

The petitioner broadcasts news as part of its business and, by so doing, enhances the profits obtained from advertising broadcasts; the newspapers affiliated with the respondent derive a large portion of their revenues from the sale of advertising space, the value of which depends in great measure upon the freshness and interest of the news furnished by them. The petitioner, in the conduct of its station, has become, and is, a competitor of respondent and its members in the obtaining and early distribution of news, for the purpose of popularizing advertising.

The petitioner has no organization of its own for gathering news, but adopts the practice of "pirating" news gathered by the respondent and its members. This practice consists in procuring copies of the Herald, the Post Intelligencer, and the Daily Times and broadcasting parts, or all, of items therein published, whether gathered by these newspapers or received by them from the respondent, the repetition being sometimes verbatim and sometimes a rearrangement of the wording. The copies of the three newspapers do not reach their subscribers for some time (in some cases as much as twenty-four hours) after publication; whereas petitioner, promptly obtaining the papers, is able to pirate and broadcast their contents and to anticipate the receipt of the news by the newspapers' subscribers. This practice constitutes unfair competition with the respondent; wrongfully deprives the respondent of the just benefits of its labors and expenditures; similarly injures respondent's members; and prejudices the respondent with its members.

The petitioner, though repeatedly requested to desist from the practice, has refused so to do, although neither the association nor any member has granted permission to make use of the news gathered by them; and the continuance by the petitioner of its practice will increasingly cause irreparable injury and damage to the respondent because the effort and expenditures to gather and obtain news will be rendered largely without reward or value so far as concerns the territory served by petitioner's station.

Prior to the return day of the order to show cause why a temporary injunction should not issue, the petitioner filed a motion to dismiss, assigning the following grounds, amongst others: the bill fails to recite facts entitling the plaintiff to the relief prayed and is without equity; there is a non-joinder of parties plaintiff since the bill discloses that the Bellingham Herald, Seattle Post Intelligencer, and Seattle Daily Times are necessary parties; the court is without jurisdiction because the matter in controversy does not exceed three thousand dollars, exclusive of interest and costs, and an inspection of the allegations of the complaint shows the complainant cannot recover any amount in excess of three thousand dollars or any other amount and the sum named in the ad damnum clause of the complaint is not a true statement of complainant's damages and is not alleged in good faith, the facts being that the amount paid to the complainant for furnishing the Associated Press news in the city of Bellingham, to any of its members, is fixed and determined by the size of the city's population, and is not affected by any other condition and complainant has not lost any amount and never will lose any amount by reason of this controversy, and defendant is not a competitor of complainant in any sense of the word; the Bellingham Herald is the real party in interest and the Associated Press has no interest in the cause.

Affidavits were presented in support of and in opposition to the granting of an injunction, and counsel were

heard upon the prayer for preliminary injunction and upon the motion to dismiss. The court found the allegations as to citizenship of the parties were true; found "the amount in controversy herein, by reason of defendant's motion to dismiss, must be construed to be in excess of $3,000.00, exclusive of interest and costs"; found the facts as to the business and conduct of the parties substantially as alleged in the complaint; but found that the petitioner had not interfered with the normal operation of respondent's business or diverted any of respondent's profit.

As conclusions of law the court held that it had jurisdiction of the parties and the subject matter "since defendant's motion to dismiss admits for the purpose of pleading all facts well pleaded in the bill of complaint and particularly the necessary diverse citizenship between complainant and defendant and the allegation that there is involved in the controversy herein more than $3,000.00, exclusive of interest and costs" and that "the complainant is a proper party to prosecute this action on its own behalf and on behalf of its members." Based upon certain of the findings of fact the court concluded the acts of the petitioner did not amount to unfair competition with respondent or any of its members and did not violate their property rights; held, therefore, that the complaint failed to state facts sufficient to constitute a cause of action; vacated the temporary restraining order, refused a preliminary injunction, and granted the petitioner's motion to dismiss with prejudice.[1]

The Circuit Court of Appeals reversed[2] and ordered that a preliminary injunction issue restraining the petitioner from appropriating and broadcasting any of the news gathered by the respondent for the period following publication in respondent's newspapers during which

[1] 9 F. Supp. 279.
[2] 80 F. (2d) 575.

the broadcasting of the pirated news to petitioner's most remote auditors may damage the business of respondent's papers in procuring and maintaining their subscriptions and advertising. On the merits the court thought the case controlled by *International News Service* v. *Associated Press,* 248 U. S. 215. Dealing with the petitioner's insistence that the amount in controversy was not shown to exceed three thousand dollars the court held that the *International News Service* case required the conclusion that the respondent was in competition with the petitioner because the decision in that case indicated that the profit seeking business of the constituent newspapers is an integral part of the corporate purpose of the respondent; and that "The several millions of dollars here alleged to be invested in the Association's business [the bill contains no such allegation] may well be damaged to the extent of $3,000 by the pirating practices described." After referring to the character and scope of the respondent's activities the court states:

"It is obvious that the business of gathering and distributing to members, *before* profitable publication, could conceivably be damaged to the extent of $3,000 by the misappropriation and premature publication of the news material. To hold otherwise would warrant the inference that no corporation could be damaged by a wrongful attack on its business, when that business happened to be run at no profit or at a loss. Also, we are unable to hold irrational the claim that the piracy caused a $3,000 damage to the Association's quasi property right in the news."

Although the decision with respect to the amount in controversy was assigned as error in this court, the parties have in the main directed their arguments to the merits; the respondent insisting that *International News Service* v. *Associated Press* fully sustains the decree below; the petitioner contending this cause may be distinguished from the one there adjudicated, or, if not, that

decision should be modified. We have no occasion to consider the soundness of these conflicting contentions, for we hold that in the circumstances the respondent had the burden of showing that the case was within the District Court's jurisdiction, and failed to carry it.

The bill seeks redress for damage to the respondent's business and for damage to the business of some or all of its members. The right for which the suit seeks protection is, therefore, the right to conduct those enterprises free of the alleged unlawful interference by the petitioner. No facts are pleaded which tend to show the value of that right. The complaint contains nothing to the purpose save the general statement that the damage to which the respondent is being subjected is in excess of three thousand dollars and the amount involved is in excess of that sum. Such a formal allegation is sufficient, unless the bill contains others which qualify or detract from it in such measure that when all are considered together it cannot fairly be said that jurisdiction appears on the face of the complaint, in which case the suit should be dismissed by the court *sua sponte* [3] or upon the defendant's motion.[4] In this case the formal allegation is not reënforced or strengthened by other portions of the complaint; neither is it neutralized or weakened by qualifying or detracting allegations. In effect it stands alone. Therefore the court would not have been bound to dismiss upon a motion based solely on alleged insufficient pleading of the amount in controversy; though it might, of its own motion, have entered upon an inquiry to ascertain whether the cause was one over which it had jurisdiction.[5] But

---

[3] *Mansfield, C. & L. M. Ry.* v. *Swan,* 111 U. S. 379, 382, 383; *Bucyrus Co.* v. *McArthur,* 219 Fed. 266.

[4] *Coal Co.* v. *Blatchford,* 11 Wall. 172; *Ladew* v. *Tennessee Copper Co.,* 179 Fed. 245; affirmed 218 U. S. 357.

[5] Act of March 3, 1875, § 5, c. 137, 18 Stat. 470, 472; Jud. Code, § 37, 28 U. S. C. § 80; *McNutt* v. *General Motors Acceptance Corp.,* 298 U. S. 178, 182, 184.

where the allegations as to the amount in controversy are challenged by the defendant in an appropriate manner, the plaintiff must support them by competent proof.[6] The petitioner's motion was an appropriate method of challenging the jurisdictional allegations of the complaint. It did not operate merely as a demurrer, for it did not assume the truth of the bill's averments and assert that in spite of their truth the complaint failed to state a case within the court's jurisdiction. On the contrary the motion traversed the truth of the allegations as to amount in controversy and in support of the denial recited facts dehors the complaint. This could have been done by answer, but the time for answer had not arrived when the rule to show cause was issued, and petitioner was faced with the possibility of an injunction. The motion required the trial court to inquire as to its jurisdiction before considering the merits of the prayer for preliminary injunction. And in such inquiry complainant had the burden of proof.[7] The only attempt to meet that burden is a reply affidavit filed on behalf of respondent, wherein it is deposed "that the payments made by newspapers for said news sold to them by complainant in the territory served by said radio station is upwards of $8,000 per month, which is being imperilled and jeopardized by the acts of defendant . . . by its unlawful and wrongful appropriation of complainant's news, and said sum greatly exceeds the sum of Three Thousand Dollars, exclusive of interest and costs, and complainant is in danger of losing said memberships and payments if defendant's practices in respect to pirating said news is not enjoined." This deposition must be read in connection with the statement in the bill that the respondent makes no profit from furnishing news to its members but equitably divides the expense amongst them. The association

---

[6] *McNutt* v. *General Motors Acceptance Corp., supra,* p. 189.

[7] *McNutt* v. *General Motors Acceptance Corp., supra,* p. 189.

cannot therefore lose the $8,000 in question. If the three newpapers in the affected territory cease to pay the sum, they will save it, not lose it, and, as to any other damage they may suffer from petitioner's competition, the affiant is silent. Assuming, without deciding, that in the circumstances disclosed the respondent has standing to maintain a suit to redress or prevent damage caused its members by petitioner's conduct, the allegation of possible damage to them is wholly inadequate, because the asserted danger of loss of members is a mere conclusion unsupported by even a suggestion that withdrawal has been threatened by any newspaper, and no intimation is given of the character or extent of the damage they would suffer by such withdrawal. The respondent having failed to support the allegations as to amount in controversy the District Court should have dismissed the bill.

The suggestion is made in the respondent's argument, and in the opinion below, that, as the allegations in the *International News Service* case, *supra,* were substantially like those of the bill now before us, this court must have been of opinion that the District Court had jurisdiction in the *International* case or it would not have considered the merits. But in that case the answer did not challenge the jurisdiction, there was no assignment of error raising the question and no argument on the subject was presented to this court. "The most that can be said is that the point was in the case if anyone had seen fit to raise it. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster* v. *Fall,* 266 U. S. 507, 511.

The Circuit Court of Appeals sustained the District Court's jurisdiction on the ground that the finding upon that point was not without support, and the appellate tribunal could not say it was wrong, in view of the magni-

tude of the respondent's operations and expenditures. As pointed out in *McNutt* v. *General Motors Acceptance Corporation, supra,* at pages 180 and 181, these factors are irrevelant upon the issue of the value of the right for which protection is here sought.

Since the allegation as to amount in controversy was challenged in appropriate manner, and no sufficient evidence was offered in support thereof, the bill should have been dismissed. *McNutt* v. *General Motors Acceptance Corp., supra,* p. 190. The Circuit Court of Appeals had jurisdiction of the appeal and as the District Court lacked jurisdiction its decree dismissing the bill should have been affirmed on that ground.

The decree of the Circuit Court of Appeals is reversed and the cause is remanded to the District Court with directions to dismiss the bill of complaint for want of jurisdiction.

*Reversed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.