**REESE v. HOLM.**

No. 134.

District Court, D. Minnesota, Third Division.

Feb. 23, 1940.

Before SANBORN, Circuit Judge, and NORDBYE and SULLIVAN, District Judges.

C. U. Landrum and D. N. Lindeman, both of Detroit Lakes, Minn., for plaintiff.

J. A. A. Burnquist, Atty. Gen., Chester S. Wilson, Deputy Atty. Gen., and George B. Sjoselius, Sp. Asst. Atty. Gen., for defendant.

PER CURIAM.

This cause came on to be heard at St. Paul, Minnesota, on the 12th day of January, 1940, before JOHN B. SANBORN, United States Circuit Judge, GUNNAR H. NORDBYE, United States District Judge, and GEORGE F. SULLIVAN, United States District Judge, sitting as a statutory three-judge court, upon the application of the plaintiff for a preliminary injunction enjoining the defendant from enforcing against the plaintiff the provisions of Chapter 284, Session Laws of Minnesota for 1939.

The plaintiff brings this suit to enjoin Mike Holm, individually and as Registrar of Motor Vehicles and Secretary of State of the State of Minnesota, from enforcing against the plaintiff, a dealer in used motor vehicles, the provisions of Chapter 284, Session Laws of Minnesota for 1939,[1] which act is asserted by the plaintiff to be violative of the Constitution of the United States.

---

[1] Chapter 284, Session Laws of 1939, reads as follows:

"An act to regulate the business of selling used or second-hand motor vehicles by dealers.

"Be it enacted by the Legislature of the State of Minnesota:

"Section 1. Non-resident dealers in motor vehicles must register vehicles and pay tax.—Every dealer in used, or second-hand, motor vehicles who is a non-resident of the state of Minnesota or who does not have a permanent place of business in this state, and every person, firm or corporation who brings any used or second-hand motor vehicle into the state of Minnesota for the purpose of sale or resale except as a trade-in on a new motor vehicle or as a trade-in on another used or second-hand car of greater value when the vehicle so brought into this state for the purpose of sale or resale, shall within ten days from the date of entry of said motor vehicle into the limits of the state of Minnesota, file with the registrar of motor vehicles on a blank provided by him a listing for taxation and application for the registration of such vehicle, and shall pay the motor vehicle tax thereon as provided by law. Said registration and payment of tax shall be made in the same manner as is now provided by law for the registration of motor vehicles previously registered in another state. Applicant shall before said used or second-hand motor vehicle is put upon a used car lot for sale or offered for sale, or sold, execute a bond with a surety company duly authorized to do business in the state of Minnesota as a surety thereon, payable to the state of Minnesota for the use and benefit of the purchaser and his vendees, conditioned to pay all loss, damages and expenses that may be sustained by the purchaser, or vendees, that may be occasioned by reason of the failure of the title of such vendor or by reason of any fraudulent misrepresentations or breaches of warranty as to freedom from liens, quality, condition, use or value of the motor vehicle being so sold. Said bond shall be in the full amount of the sale price of such motor vehicle but in no event to exceed the sum of $1000 and shall be filed with the registrar of motor vehicles of the state of Minnesota by the vendor and be approved by him as to the amount, form and as to the solvency of the surety, and for which service by said registrar of motor vehicles, the vendor shall pay a fee of five dollars for each bond so filed and approved, which fees shall be paid into the state treasury to the credit of the general revenue fund. Said bond shall carry a provision that no suit or action thereon shall be brought or maintained unless the same be instituted with-

It is the contention of the plaintiff that said law is repugnant to Article I, Section 8, Clause 3, the commerce clause of the Constitution, U.S.C.A., in that it is a burden on interstate commerce; that it attempts to deprive the plaintiff of his liberty and property without due process of law and denies to him the equal protection of the laws in violation of Section 1 of the Fourteenth Amendment, and, further, that the act, in its requirements, results· in the taking of the property of ·this plaintiff without just compensation, and contrary to the Constitution of the United States. It is the plaintiff's further contention that said law, and the rules and regulations that the defendant has made pursuant thereto, are repugnant to Article I, Section 10, of the Constitution of the United States in that they impair the obligation of contracts and limit the right of contract in connection with a lawful undertaking.

A statutory· court of three judges was convened in accordance with Title 28, United States Code Annotated, Section 380, to pass upon the application of the plaintiff for an interlocutory injunction.

Subsequent to the service of the summons and complaint and notice of motion, the defendant made a motion to dismiss said proceeding on the ground that the Court is without jurisdiction of the controversy in that the amount in controversy is less than $3,000, exclusive of interest and costs (28 U.S.C.A. § 41(1), and on the further ground that a plain, speedy and efficient remedy may be had at law or in equity in the courts of the State of Minnesota.

By order of this Court, final disposition of said motion to dismiss was deferred until the hearing upon the application of the plaintiff for an interlocutory injunction. See Rule 12(d), Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Upon the hearing for an interlocutory injunction, evidence in the form of affidavits was submitted.

The plaintiff is a resident and citizen of the State of Minnesota, as is the defendant. The complaint alleges that the amount involved exceeds the sum of $3,000, exclusive of interest and costs, and that the right of the plaintiff herein sought by this action to be established, maintained and protected, is of the value to him of a sum in excess of $3,000, exclusive of interest and costs. The complaint further

---

in one year from the date of the execution of said bond.

"Sec. 2. Must deliver certificate to purchaser—Every person, firm or corporation upon the sale and delivery of any used, or second-hand, motor vehicle shall, within 24 hours thereof, deliver to the vendee, and endorsed according to law, a registration certificate issued for said motor vehicle by the registrar of motor vehicles of the state of Minnesota.

"Sec. 3. Seller not to maintain action unless vehicle is registered.—No action, nor right of action to recover any such motor vehicle, nor any part of the selling price thereof, shall be maintained in the courts of this state by any dealer or vendor, his successors or assigns, in any case wherein such vendor or dealer shall have failed to comply with the terms and provisions of this act, and in addition thereto, such vendor or dealer, upon conviction for the violation of any of the provisions of this act, shall be deemed guilty of a misdemeanor. Provided, however, that this section shall not apply to the holder of a note or notes representing a portion of the purchase price of such motor vehicle when the owner thereof was and is a bona fide purchaser of said note or notes, before maturity, for value and without knowledge that the vendor

of such vehicle has not complied with this act.

"Sec. 4. Definitions.—The terms 'dealer' and 'vendor' herein used shall be construed to include every individual, partnership, corporation or trust whose business in whole or in part, is that of selling new or used ·motor vehicles, or both, and likewise shall be construed to include every agent, representative, or consignee of any such dealer as defined above as fully as if same had been herein expressly set out, except that no agent, representative or consignee of such dealer or vendor shall be required to make and file the said bond if such dealer or vendor for whom such agent, representative or consignee acts fully complies, in each instance, with the provisions of this act.

"Sec. 5. Provisions severable.—If any clause, sentence, paragraph, or part of this Act shall for any reason be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder of this act but shall be confined in its operation of the clause, sentence, paragraph, or part thereof, directly involved in the controversy in which such judgment shall have been rendered.

"Approved April 17, 1939."

states that during the month of October, 1939, the plaintiff brought a used or secondhand vehicle into the State of Minnesota for the purpose of sale, or resale, and not to be used as a trade in on a new motor vehicle or as a trade in on another used car of greater value, having purchased the motor vehicle in the City of Chicago, State of Illinois; that he filed with the defendant a proper listing for taxation and proper application for the registration of such vehicle, which was accompanied by an offer to then and there pay the motor vehicle tax thereon; that the defendant, according to the information and belief of the plaintiff, filed no legal objections to the listing for taxation and registration of said motor vehicle in the State of Minnesota, but refused to list or register the same, basing his refusal upon the ground that said Chapter 284 of the Session Laws of Minnesota, 1939, forbade him to list said motor vehicle for taxation, or to register the same, for the reason that the surety bond referred to in said Chapter 284 was not executed, filed and approved, and no fee for approval of said bond was paid. The complaint contains a formal allegation to the effect that the amount in controversy is in excess of $3,000, exclusive of interest and costs.

In fortification of the formal allegation in the complaint, and to sustain the claim that the amount involved in the controversy is in excess of $3,000, exclusive of interest and costs, the plaintiff offers his affidavit, which, inter alia, recites "that affiant has been in the used car business for several years and can accurately gauge the effect of this law upon his business. That the law went into effect April 17, 1939, and affiant immediately noticed its effect upon his business. That although 1939 was a much better year for business in Detroit Lakes [Minnesota, the location of his business], than was 1938, affiant's net profit for the period from May 1, 1939, to December 1, 1939, was $2445.00 less than for the same period in 1938, a loss of approximately $360 a month. That such actual loss, if figured for a twelve-month period, would amount to at least $4320.00." And in his affidavit he further states: "Affiant states that said law is causing irreparable loss and damage to his said business and that loss is explained as follows: That the added expense to each car is $15.00. No bond may be secured for a premium of less than $10.00. When to that is added the $5.00 fee for approval of said bond, the total additional cost is $15.00. But the added $15.00 a car expense is not the only effect of this law. When affiant undertakes to sell a car, whether it comes from outside the State of Minnesota or not, he has competition. Affiant's competitors tell his prospective purchasers that affiant is so crooked that he has to give bond to Mike Holm and thus cause affiant loss of many sales." He further states: "Affiant states that it is a well-known fact that there is a limit to the amount of bonds a person may be under. Bonding companies are already inquiring as to the amount of bonds given by this affiant. Should the limit of the bonds which this affiant can secure be reached this affiant would be unable to do business. Affiant knows the value of his business. That said business is of the worth and value of $10,000.00. That should the decision of this matter be held up for a year and this law be enforced for that time affiant's business would be entirely wiped out, gone and worthless and affiant's damage would be at least $10,000.00. That even though affiant could stick it out and continue in business for a year the loss to him would exceed $4000.00 in net profit alone." The plaintiff, in his affidavit, further avers that his records disclose that since the passage of this act, his loss has been $360 a month, and that said loss has been wholly due to this law.

At the outset we are concerned with the question of jurisdiction.

It is the contention of the plaintiff that this Court has jurisdiction of the cause: First, under the provisions of subsection 14, section 41, 28 U.S.C.A. (R.S. § 563); second, that it is a suit where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and arises under the Constitution of the United States.

Taking up the first contention which plaintiff makes for the jurisdiction of this Court, the law provides that district courts shall have original jurisdiction, without regard to the sum or value of the matter in controversy, among other enumerated cases of: "Suits to redress deprivation of civil rights. * * * Of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage, of any State, of any right, privilege, or immunity, secured by the Constitution

of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States." 28 U.S.C.A. § 41(14). The plaintiff urges that the sum or value of the matter in controversy is of no concern in determining jurisdiction, since the present suit is within the purview of said subsection 14, in that the challenged statute deprives him of rights and privileges secured to him by the Constitution of the United States.

▆ The rights of persons to have legislation of a State conform to the mandate of the Constitution in that the obligation of contracts be not impaired, that property be not taken without due process of law, and that the field of legislation with respect to interstate commerce be only entered by the United States, are not such rights as are contemplated by subsection 14. The challenged statute does not deprive the plaintiff from exercising any of the rights enumerated in Chapter 3, Civil Rights, Section 41, Title 8, U.S.C.A., nor any of the specific rights granted to persons under the Constitution of the United States. [2]

In Holt v. Indiana Manufacturing Company, 176 U.S. 68, 20 S.Ct. 272, 273, 44 L.Ed. 374, complainant rested jurisdiction on the sixteenth clause of Section 629, of the Revised Statutes (same as Sec. 41 (14), 28 U.S.C.A.). The court said, in reference to the basis for jurisdiction: "* * * it is sufficient to say that they refer to civil rights only, and are inapplicable here. If state legislation impairs the obligations of a contract, or deprives of property without due process of law, or denies the equal protection of the laws, as asserted by counsel * * *, remedies are found in the 1st section of the act of August 13, 1888 (25 Stat. 433, chap. 866), giving to the circuit courts jurisdiction of all cases arising under the Constitution and laws of the United States * * *."

In considering the rights secured to a person by Article I, Section 10, of the Constitution (which forbids states to pass laws impairing the obligation of contracts), the Supreme Court, in the Virginia Coupon Cases, Carter v. Greenhow, 114 U.S. 317, 5 S.Ct. 928, 930, 962, 29 L.Ed. 202, stated: "That constitutional provision, so far as it can be said to confer upon or secure to any person any individual rights, does so only indirectly and incidentally. It forbids the passage by the states of laws such as are described. If any such are nevertheless passed by the legislature of a state, they are unconstitutional, null and void. In any judicial proceeding necessary to vindicate his rights under a contract affected by such legislation, the individual has a right to have a judicial determination declaring the nullity of the attempt to impair its obligation. This is the only right secured to him by that clause of the constitution."

What was said by the Supreme Court in the Virginia Coupon Cases seems sufficient answer to the contentions here made by the plaintiff—that the Minnesota Act offends the commerce, contract and due process clauses of the Constitution of the United States, and that by reason thereof, the challenged Act deprives the plaintiff of rights granted to him under the Constitution. Assuming without deciding that the Act offends these clauses of the Constitution, it cannot be said that the Act deprives plaintiff of any rights directly granted to him under the Constitution. No right is directly granted to the plaintiff under the commerce clause, which provides that Congress shall regulate commerce between the States. Article I, Section 10, of the Constitution prohibits States from passing any law impairing the obligation of contracts, and Clause 3, Section 1, of the Fourteenth Amendment, prohibits a State from depriving a person of property without due process of law. No rights are directly granted to the plaintiff under any of said clauses. However, because of them, he in common with all others, has the indirect and incidental right to have the laws of the State conform to said provisions of the Constitution.

[2] Bowman et al. v. Chicago & Northwestern Railway Company, 115 U.S. 611, 6 S.Ct. 192, 29 L.Ed. 502; Holt v. Indiana Manufacturing Company, 176 U.S. 68, 20 S.Ct. 272, 44 L.Ed. 374; Lawless et al. v. Duval County, D.C., 6 F.Supp. 303; Virginia Coupon Cases, Carter v. Greenhow, 114 U.S. 317, 5 S.Ct. 928, 962, 29 L.Ed. 202. See also discussions of privileges and immunities in Hague v. C. I. O., 307 U.S. 496, pages 508-510, 59 S.Ct. 954, 83 L.Ed. 1423; Madden, etc., v. Commonwealth of Kentucky, etc., 60 S. Ct. 406, 84 L.Ed. —, decided January 29, 1940, not yet reported [in state report]; Slaughter-House Cases, 16 Wall. 36, 71, 72, 21 L.Ed. 394; Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835.

The jurisdiction of this Court cannot be based upon subsection 14. This is a suit which arises under the Constitution of the United States. The validity of the enactment is questioned. It is claimed to be violative of the provisions of the Constitution hereinbefore referred to. If the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000, jurisdiction may be based upon subsection 1 of Section 41.

The question then arises as to whether the matter in controversy exceeds the value of $3,000, exclusive of interest and costs, so as to give the District Court jurisdiction under Section 41(1), 28 U.S.C. A.

Section 41, subsection (1), 28 U.S.C.A., provides: "The district courts shall have original jurisdiction as follows:

"(1) * * * Of all suits of a civil nature, at common law or in equity * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different States, or (c) is between citizens of a State and foreign States, citizens, or subjects." Where the matter in controversy is the right to conduct and carry on a business, and that business has been prohibited by State statute, the issue on jurisdiction is the value of the right to conduct the business free from the prohibition set up by the statute. See Gibbs et al. v. Buck et al., 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111.

The complaint contains a formal allegation that the amount involved in the controversy, exclusive of interest and costs, exceeds the sum of $3,000, and "Such a formal allegation is sufficient, unless the bill contains others which qualify or detract from it in such measure that when all are considered together it cannot fairly be said that jurisdiction appears on the face of the complaint, * * *." KVOS, Inc., v. Associated Press, 299 U.S. 269, at page 277, 57 S.Ct. 197, 200, 81 L. Ed. 183.

The complaint herein contains matter which nullifies the allegation as to the amount pleaded as being the value of the matter in controversy. It alleges that by the provisions of the questioned Act, the State of Minnesota is seeking to exact from the plaintiff, for each automobile which he brings into the State for resale, the sum of $5 for the approval of the bond required, and is seeking to put him to the further expense of $10.00, the cost of a surety bond.

The plaintiff attempts to aid his complaint in respect to the value of the matter in controversy by his affidavit, setting out therein the losses in his business during the months that the law has been in effect, and losses which he may expect for a reasonable length of time in the future. He makes affidavit that prior to the bringing of this action, he expended the sum of $350 for fees and costs of compliance with said Act. Nothing is said in the complaint or affidavits as to the number of automobiles which he brings into the State each year from other States, and which he offers for resale, or which he sells in Minnesota. There is a total absence of allegation in the complaint or proof in the form of affidavit as to the probable cost of compliance to the plaintiff with the questioned Act.

The assailed statute regulates the business of bringing used cars from without the State of Minnesota into that State for resale purposes. The right here sought is to be free from the regulations imposed. The Act does not prohibit the business in which plaintiff is engaged, but it imposes certain fees or exactions upon each transaction involving an automobile which comes within the purview of the Act. The amount of fees and exactions which plaintiff may be required to pay is based upon the number of automobiles which he brings into the State for resale. His business is not prohibited, but his cost of doing business is relatively increased, and the measure of loss occasioned him, if any, is the cost of compliance with the Act. See McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135.

The burden is upon the plaintiff to show that this Court has jurisdiction of the controversy. Gibbs v. Buck, supra, 307 U.S. page 72, 59 S.Ct. 725, 83 L.Ed. 1111; KVOS, Inc. v. Associated Press, supra, 299 U.S. page 277, 57 S.Ct. 197, 81 L.Ed. 183; McNutt v. General Motors Acceptance Corporation, supra, 298 U.S. page 189, 56 S.Ct. 780, 80 L.Ed. 1135.

We are not here confronted with a prohibitory statute, but with one of regulation, and incidental fees and expenses of such regulation. The issue on the value

of the matter in controversy is the amount of the fees or exactions which the plaintiff would be required to expend under the provisions of the assailed Act (Healy, etc., v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248), and the cost of compliance with its requirements. Packard v. Banton, etc., 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596; Petroleum Exploration, Inc., v. Public Service Commission, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294.

The subject matter of this controversy is the fees and expenses which the plaintiff is required to pay and incur under the Act. The amount thereof is the true test of the value of the matter in controversy. While plaintiff alleges certain losses of profits in his business since the enactment of the law, some of such losses, as appear from the allegations of the complaint, are due to matters other than the questioned legislation. Sheer conclusions and assertions of collateral damage are not pertinent or competent in determining the amount in controversy. The loss occasioned to the plaintiff by the Act is readily ascertainable. It can be computed by simple arithmetic, by multiplying the number of cars brought into the State for resale by the sum of $15, the latter item comprising the fee and the cost of a surety bond for each car. This total will give us the value of the matter in controversy. This was the yardstick applied in determining jurisdiction in the case of Clark v. Paul Gray, Inc., 306 U.S. 583, 589, 59 S.Ct. 744, 83 L.Ed. 1001. Applying this rule, we find the bill of complaint far short in showing the requisite amount for jurisdiction.

In Bender v. Connor, D.C., 28 F.Supp. 903, 906, a statutory court, in considering its jurisdiction of a suit attacking a statute of Connecticut, the context of which is substantially the same as that of the Minnesota statute, stated: "But the existence of a substantial constitutional issue is not enough to give this court jurisdiction; the requirement that the matter in controversy must be in excess of $3,000 must also be satisfied;" and denied jurisdiction when the plaintiff failed to make it appear that the requisite amount was involved.

Plaintiff cites McLain, Inc., et al. v. Hoey, etc., D.C., 19 F.Supp. 990, wherein a statutory court declared invalid an act of the State of North Carolina, treating of the same subject matter as Chapter 284,

Session Laws of 1939, Minnesota. This statute, if not identical, has very similar provisions to those of the Minnesota law. The statute was held invalid on the ground that it violated the commerce clause. However, the question of jurisdiction did not arise in that case, and the decision is of no aid on the question of jurisdiction, which is before this Court.

We are constrained to hold that this Court is without jurisdiction of the controversy, since the bill of complaint and the affidavits offered in support of jurisdiction fail to allege or show the value of the matter in controversy to be in excess of $3,000, exclusive of interest and costs.

Since this Court is without jurisdiction, the merits of the motion for an interlocutory restraining order are not considered.

It is therefore ordered that the above and foregoing entitled action be, and the same is hereby, dismissed for want of jurisdiction.