**FEDERATED MUTUAL IMPLEMENT AND HARDWARE INSURANCE COMPANY, a corporation, Appellant,**

v.

**Roy STEINHEIDER, Appellee.**

**No. 16176.**

United States Court of Appeals Eighth Circuit.

July 22, 1959.

J. A. C. Kennedy, Jr., Omaha, Neb. (Cassem, Tierney, Adams, Kennedy & Henatsch, Omaha, Neb., were with him on the brief), for appellant.

Yale C. Holland, Omaha, Neb. (Kennedy, Holland, DeLacy & Svoboda and Thomas R. Burke, Omaha, Neb., were with him on the brief), for appellee.

Before SANBORN, VOGEL and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from an order dismissing this action for lack of jurisdiction upon the ground that the plaintiff (appellant) had failed to sustain the burden of proving that "the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs." 28 U.S.C. § 1332 as amended. Defendant (appellee) raised that issue by denying, in its answer, the allegation in the amended complaint that the jurisdictional amount was in controversy. The correctness of the District Court's ruling in that regard is the sole question for decision.

The Federated Mutual Implement and Hardware Insurance Company, a Minnesota corporation, has its principal place of business at Owatonna, Minnesota, and is licensed to sell insurance in Nebraska. It brought this action on October 10, 1958, for injunctive relief and for damages against Roy Steinheider, a citizen of Auburn, Nebraska, who formerly had been employed by the Company as an insurance salesman.

The first claim stated in the amended complaint is that the defendant, Steinheider, had been an insurance salesman for the plaintiff Company from September 28, 1948, to August 1, 1958, and had worked a territory, assigned him by the Company, consisting of eleven [later reduced to eight] counties in Nebraska; that on August 1, 1958, the defendant voluntarily terminated his employment with the Company; that his last contract with it was executed February 26, 1957, and contained the following provisions:

"4. Salesman expressly agrees and states that any and all insurance business at any time or times procured by the Salesman while employed by the Company is and shall be the permanent and exclusive property of the Employer and for the Employer's exclusive benefit; that the records, use and control of expirations on all such insurance business shall be and remain the ab-

solute and exclusive property of the Employer.

"5. Salesman agrees that he will not, within a period of two years following the date of the voluntary or involuntary termination of his employment with Employer, either directly or indirectly, by and for himself, or as the agent of another, or through others as his agent:

"(a) Engage in, or in any way be connected with, the fire, casualty and accident and health insurance business in the territory assigned to him or worked by him under this or under any other previous Contracts of Employment, if any, with Employer;

"(b) Divulge the names of Employer's policyholders and accounts to any other person, firm or corporation;

"(c) In any way seek to induce, bring about, promote, facilitate or encourage the discontinuance of, or in any way solicit for and in behalf of himself or others, or in any way quote rates, accept, receive, write, bind, broker or transfer any renewal or replacement of any of the insurance business, policies, risks, or accounts, written, issued, covered, obtained (whether through the efforts of the Salesman or not) or carried by the Employer in any territory or territories assigned to the Salesman under this or under any other previous Contracts of Employment, if any, with Employer.";

that since terminating his relationship with the Company the defendant, Steinheider, has violated the above quoted contract provisions by engaging in the insurance business, in which he had agreed not to engage for two years, in the territory formerly assigned him by the Company, and by soliciting renewals and renewing and replacing policies, formerly carried by the Company, in other competing companies, and is continuing such activities; that the Company has annual premiums of approximately $60,000 in defendant's former territory

which are jeopardized by his unlawful activities; and that the defendant's violations of his contract with the Company were willful and will be continued to its damage unless enjoined.

The second claim stated in the amended complaint is that "As the result of defendant's actions aforestated plaintiff has suffered and will continue to suffer damages, the exact amount of which cannot at this time be accurately stated but which will aggregate more than $10,000.00."

The Company prayed for an injunction to prevent the defendant from violating the restrictive covenants of his contract of employment and from engaging, during the two-year period specified in the contract, in competition with the Company.

The Company also asked for damages "adequate to compensate plaintiff for its loss of premiums, present and future, and injury to plaintiff's reputation, good will, and name resulting from defendant's act in violation of his contract with plaintiff," plus costs and attorney's fees.

In its amended complaint, the Company alleged diversity of citizenship and that "The amount in controversy in each of the causes of action stated herein exceeds the sum of $10,000.00 exclusive of interest and costs," and that the court has jurisdiction.

The defendant in his answer, filed on November 19, 1958, to the plaintiff's amended complaint, filed November 14, 1958, denied that the jurisdictional amount was involved and also asserted that the restrictive covenants of the employment contract were invalid. The District Court had, on November 7, 1958, denied the Company's motion for a preliminary injunction.

■ After a trial on the merits, the District Court filed its findings of fact, conclusions of law, and order. It found, in substance: that the Company was engaged in the business of writing fire, casualty and accident and health insurance, and was licensed in the forty-eight states, including Nebraska, and in the

provinces of Canada; that it operated on a direct writing basis, selling insurance through full-time salaried salesmen, of which it had 305; that it had employed Steinheider, the defendant, had given him preliminary training at its home office, had assigned him a territory in southeastern Nebraska, and had furnished him a list of the Company's policyholders in his territory and manuals and other supplies, including advertising matter; that the parties entered into the employment contract of February 26, 1957; that the employment relationship between them ended August 1, 1958; that thereafter the defendant, in the territory in which he previously represented the Company, engaged in selling the kinds of insurance he had previously been selling for it; that the Company has since employed a duly licensed sales representative in the territory; that the Company by letter on August 15, 1958, requested the defendant to abide by his contract; that the gross premium income of the Company in the defendant's territory for the year 1957 was $66,000; that in the first six months of 1958 it was $24,000; and that during the first two months after the termination of his contract the defendant placed with other companies renewals of policies previously carried by the Company, the premiums on which totaled $1,749.20.

In determining that the requisite jurisdictional amount was not in controversy, the District Court concluded that the burden of establishing that amount was upon the plaintiff; that, in a suit for an injunction, jurisdiction is to be tested by the value of the right to be protected against interference; that in the instant case the right sought to be protected was the right to be free from the defendant's competition for the period and to the extent specified by the contract; that the value of the right may be measured by the loss which would follow from a disregard of the contractual restraints agreed to; that the gross premium income of the Company from the territory in suit affords no means from which the court could determine the extent to which the plaintiff's business is being affected by the defendant's proscribed competing activities; that the Company is not precluded from selling insurance or servicing its accounts in the territory in which it was formerly represented by the defendant; that neither the defendant's selling of insurance in competition with the Company nor his placing of renewals involving $1,749.20 in premiums with other companies during the first two months after terminating his contract with the Company established that whatever loss would result to it from his breach of contract would exceed $10,000; and that, "In the absence of any showing by a preponderance of the evidence that the value of the right sought to be protected in this case would exceed $10,000 in amount, the allegation of jurisdictional amount is not justified."

The facts found by the District Court are not in dispute. In addition, it should be said that the record shows that the Company has been in business 54 years, and does an annual volume of 27 to 28 million dollars; that it deals, through its salesmen, directly with its policyholders; that the defendant was its exclusive sales representative in the territory assigned him; and that during the years 1948 to 1958, inclusive, the payments made by the Company to him totaled $58,306.61.

The applicable law is not difficult to state, but is not always easy to apply. Concededly, if the allegation of jurisdictional amount is denied, it must be proved and the burden of proof is upon the party who asserts jurisdiction. "If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed.

1135; KVOS, Inc. v. Associated Press, 299 U.S. 269, 277–278, 57 S.Ct. 197, 81 L.Ed. 183; Bunn, Jurisdiction and Practice of the Courts of the United States, pages 64–65. See also Rule 12(h) of the Federal Rules of Civil Procedure, 28 U.S.C. "In a suit to enforce an alleged right, the value of the right sought to be gained determines the amount in dispute; for instance, in a suit to enjoin a particular regulation, the value of the right of plaintiff to carry on his business freed from the restraint of the regulation is the test of jurisdiction. (Packard v. Banton, 264 U.S. 140, 142, 44 S.Ct. 257, 68 L.Ed. 596.) This may be very much less than the value of the business. 'The object or right to be protected against unconstitutional interference is the right to be free of that regulation. The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed.' (McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 181, 56 S.Ct. 780, 80 L.Ed. 1135.)" Bunn, Jurisdiction and Practice of the Courts of the United States, page 66.

We note that in KVOS, Inc. v. Associated Press, supra, at pages 279–280 of 299 U.S., at page 201 of 57 S.Ct., the Supreme Court said:

"The Circuit Court of Appeals sustained the District Court's jurisdiction on the ground that the finding upon that point was not without support, and the appellate tribunal could not say it was wrong, in view of the magnitude of the respondent's operations and expenditures. As pointed out in McNutt v. General Motors Acceptance Corporation, supra, at pages 180 and 181 [of 298 U.S., at pages 780, 781 of 56 S.Ct.], these factors are irrelevant upon the issue of the value of the right for which protection is here sought."

The Company makes a persuasive argument that the conduct of the defendant, violative of his agreement to refrain from competition with it, jeopardizes the business of the Company in the territory in which he formerly solicited insurance for it, seriously threatens its premium income and the value of its reputation and good will, and impairs its method of doing business through full-time salesmen. The Company asserts that, under the evidence, the case should be held to involve an amount in excess of $10,000. Nevertheless, we agree with the District Court that the Company has failed to establish by a preponderance of the evidence that the right of the Company to be free from the competition of the defendant for two years, as provided in the Company's contract with the defendant, is of a value in excess of $10,000. It is our opinion that the District Court did not err in dismissing the action for lack of jurisdiction. The Company is, of course, free to prosecute its claims for relief against the defendant in the State Courts of Nebraska.

The order appealed from is affirmed.