G. W. YODER, Chairman, Ted Hawley, Vice Chairman, E. L. Anderson, Member, Allen Zimmerman, Member, Winston Cox, Member, of the Oil and Gas Conservation Commission of the State of Montana, Appellants,

v.

ASSINIBOINE AND SIOUX TRIBES OF the FORT PECK INDIAN RESERVATION, MONTANA, William Youpee, a Member of the Assiniboine and Sioux Tribes of the Fort Peck Reservation on Behalf of Himself and All Members of the Tribes, Appellees.

No. 19155.

United States Court of Appeals
Ninth Circuit.

Nov. 25, 1964.

Rehearing Denied Jan. 13, 1965.

Forrest H. Anderson, Atty. Gen., of Montana, John H. Risken, Helena, Mont., for appellants.

Marvin J. Sonosky, John S. White, Washington, D. C., and John M. Schiltz, Billings, Mont., for appellees.

A. Pratt Kesler, Atty. Gen., for Utah, and Ronald N. Boyce, Chief Asst. Atty. Gen., Salt Lake City, Utah, for amicus curiae state of Utah.

John F. Raper, Atty. Gen., for Wyoming, Helgi Johanneson, Atty. Gen., for North Dakota, R. L. Smith, Chairman, Nebraska Oil & Gas Conservation Comm., Samuel R. Freeman, Asst. Atty. Gen., of Colorado, for the Colorado Oil & Gas Conservation Comm., all amici curiae.

Allan G. Shepard, Atty. Gen., and Stephen W. Boller, Asst. Atty. Gen., for State of Idaho, Boise, Idaho, amicus curiae state of Idaho.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

By this suit the Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation in Montana (the "Tribes") sought an injunction to restrain the Montana Oil and Gas Conservation Commission (the Commission) from enforcing its order "pooling" lands owned by the Tribes with lands of the Calvert Exploration Company, in order to form a "spacing unit" in which to drill an oil and gas well.

The Tribes, predicating jurisdiction of the district court on 28 U.S.C. § 1331, alleged in their complaint " * * * that the matter in controversy arises under the laws of the United States, as hereinafter more fully appears [and] * * * exceeds, exclusive of interest and costs, the sum of $10,000." This jurisdictional allegation was followed by a statement of the Tribes' claim. The Commission's answer challenged the jurisdiction of the district court and put in issue a number of the allegations material to the claim itself.

Following a pre-trial conference, at which was entered an order reflecting some facts agreed upon and conceded by the respective parties, the matter was submitted to the district court upon cross-motions for summary judgment. The district court found for the Tribes and against the Commission. In its written opinion [Assiniboine and Sioux Tribes of Fort Peck Indian Reservation v. Calvert Exploration Co., 223 F.Supp. 909] the court concluded that the claim was within its jurisdiction. Turning to the merits, it declared that by virtue of 25 U.S.C. § 396d and several regulations promulgated by the Secretary of the Interior regarding operations under oil and gas leases of Indian lands, "the approval of well spacing programs by the supervisor as the representative of the Secretary of the Interior is required." Judgment was rendered voiding the Commission's order and awarding the Tribes injunctive relief. The Commission has appealed.

The record shows that the Calvert Exploration Company owns the lessees' interests in oil and gas leases covering two adjoining 40 acre tracts of land belonging to the Tribes and situated in the Benrud Oil Field in Eastern Montana. The leases were duly approved by the Secretary of the Interior, as required by 25 U.S.C. § 396a. They require the lessee to drill a well on the land and reserve to the Tribes as rental a royalty consisting of 12½ per cent of all gas and oil produced. All lands within the Benrud Field are subject to an oil conservation order of the Commission,[1]

---

1. Acting under the authority of Montana Law (Sec. 60–127 and 60–129 R.C.M.1947.

which fixed 160 acres as the minimum geographical area, or "spacing unit", for any one oil or gas well. To meet this requirement, Calvert first sought permission from the Tribes to include or "pool" their two 40 acre tracts with an adjoining 80 that Calvert also had under lease from non-Indians, but the Tribes refused. Calvert then invoked a state statute [Sec. 60–130 R.C.M., 1947] and, over the Tribes' objection, secured from the Commission an order combining the several tracts into a single "spacing unit" and "pooling all interests in the spacing unit for the development and operation of the spacing unit." Calvert then started to drill. The well was completed after this suit was commenced, but proved to be a dry hole and was abandoned.

On appeal, the Commission has continued its attack on jurisdiction. As in the district court, the challenge is rested on the sole ground that the matter in controversy is entirely lacking in value. Thus the Commission has never suggested that matter is not one "arising under" federal law, but what it has consistently contended is that the "matter in controversy" does not meet the additional statutory requirement that it exceed "the sum or value of $10,000."

 "It is incumbent upon the plaintiff properly to allege the jurisdictional facts according to the nature of the case." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936). Here, although the formal allegation of value made by the Tribes in their complaint was sufficient from the standpoint of pleading, [K. V. O. S., Inc. v. Associated Press, 299 U.S. 269, 277, 57 S.Ct. 197, 81 L.Ed. 183 (1963)] that allegation being denied by the Commission was tendered as a factual issue requiring the district court to inquire into the question of its jurisdiction before proceeding to the merits of the motion for summary judgment. And on such inquiry the Tribes had the burden of proof. Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); McNutt v. General

Motors Acceptance Corp., supra; K. V. O. S., Inc. v. Associated Press, supra.

The complaint discloses that the Tribes, like the complainants in K. V. O. S. and McNutt, are seeking to protect property interests from an asserted unlawful interference. Indeed, the Tribes say in brief that "The object of the suit was to protect property and property rights and to be free from state regulation. The jurisdictional test is the value of the right to be protected." However, the Tribes seemingly take the position that the land, or their rights under the leases, constituted the proper measure of value. And this view was evidently shared by the district court, for the fact stressed in the opinion was that "On the date the complaint was filed Calvert Exploration Company was still drilling for oil and gas on the tribal lands. * * * This would indicate value of the leasehold substantially in excess of $10,000."

The allegations in the complaint do no more than describe the lands, declare their ownership and size and state that they are subject to the oil and gas leases which Calvert holds; the remainder of the materials before the court, when the motions for summary judgment were submitted, add nothing except the further facts that the lands are situated in an oil field, that on the date the complaint was filed Calvert was actively engaged in drilling operations, and that they adjoin property on which there is a producing oil well.

We readily acknowledge that these facts tend to show that the Tribes' lands or the expected royalties, even though speculative, had a considerable present worth, [Montana Railway Co. v. Warren, 137 U.S. 348, 11 S.Ct. 96, 34 L.Ed. 681 (1890); Phillips v. United States, 243 F.2d 1 (9th Cir. 1957); Eagle Lake Improvement Co. v. United States, 141 F.2d 562 (5th Cir. 1944); Cal-Bay Corp. v. United States, 169 F.2d 15 (9th Cir. 1948), cert. den. 335 U.S. 859, 69 S.Ct. 134, 93 L.Ed. 406], and it may be that they would support a determination that the sum exceeded $10,000.

■ But the matter in controversy is not the lands or the royalties, but the regulation and the right to be free from it. The Commission's order does not purport to divest the Tribes of their property, nor does it appear to impair their lease rights or interfere with any other property interest.

We think that in this respect the situation in this case is much the same as the one disclosed in McNutt v. General Motors Acceptance Corp., supra. That was a suit against state officials to restrain enforcement of an Act to regulate the business of purchasing installment sales contracts and fix "finance charges."

In its complaint, General Motors Acceptance Corporation alleged that the requisite amount was involved. Defendants denied this, but apparently did not press the issue with much vigor. When the matter went to trial, General Motors adduced considerable evidence showing the dollar amount of the business transacted, the number of persons it employed, the size and number of the offices it maintained, and other related facts. The district court, accepting this as sufficient proof of value, rendered a decision on the merits in favor of General Motors and granted a permanent injunction. On appeal—this being a three judge district court case—the Supreme Court took a critical look into the question and, after deciding that the burden was upon General Motors to establish value, concluded that the proof in the record completely missed the mark, and that the district court had no jurisdiction in the matter. Noting that "Respondent invokes the principle that jurisdiction is to be tested by the value of the object or right to be protected against interference," the Court declared:

"But in the instant case, the statute does not attempt to prevent respondent from conducting its business. There is no showing that it cannot obtain a license and proceed with its operations. The value or net worth of the business which respondent transacts in Indiana is not involved save to the extent that it may be affected by the incidence of the statutory regulation. The object or right to be protected against unconstitutional interference is the right to be free of that regulation. The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed. The particular allegations of respondent's bill as to the extent or value of its business throw no light upon that subject. They fail to set forth any facts showing what, if any, curtailment of business and consequent loss the enforcement of the statute would involve. The bill is thus destitute of any appropriate allegation as to jurisdictional amount save the general allegation that the matter in controversy exceeds $3,000.[2] That allegation was put in issue and the record discloses neither finding nor evidence to sustain it."

Similarly, in K. V. O. S., a suit by the Associated Press against Radio Station K. V. O. S. to enjoin alleged unfair competition by the latter consisting of "pirating" of news gathered by Associated Press for its members, this court had accepted as adequate proof on the issue of amount in controversy the fact that Associated Press had invested large sums in the business activities [9 Cir., 80 F.2d 575]. Certiorari was granted [298 U.S. 650, 56 S.Ct. 938, 80 L.Ed. 1379], and the Supreme Court, after pointing out that the matter in controversy "for which the suit seeks protection is, therefore, the right to conduct those enter-

2. Such was the requisite amount when that suit was commenced [28 U.S.C.1940 ed. 41(1) 36 Stat. 1091].

If the statute prohibited the business altogether instead of simply regulating the manner in which it could legitimately be conducted, then the right to carry on the business at all would be the right for which protection was sought and the measure of value would of course be the value of the business itself. Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

'prises free of the alleged unlawful interference by the petitioner" declared that proof of the value of the business would not support an inference that a tortious interference with the business would result in damages. It said:

> "The Circuit Court of Appeals sustained the District Court's jurisdiction on the ground that the finding upon that point was not without support, and the appellate tribunal could not say it was wrong, in view of the magnitude of the respondent's operations and expenditures. As pointed out in McNutt v. General Motors Acceptance Corporation, supra, [298 U.S.] at pages 180 and 181 [56 S.Ct. 780, 781], these factors are irrelevant upon the issue of the value of the right for which protection is here sought.

> "Since the allegation as to amount in controversy was challenged in appropriate manner, and no sufficient evidence was offered in support thereof, the bill should have been dismissed." (299 U.S. 269, at 279–280, 57 S.Ct. 197, at 201).

We are mindful that the dispute before us concerns a matter of considerable importance, not only to the immediate parties, but to the National Government as well as the several states and to numerous persons having similar interests as those of the Tribes.

Nevertheless, the importance of a question, or the fact that a decision may have a far-reaching effect, does not alone entitle a prospective suitor to resort to the federal courts, even though the controversy is one governed by federal law.

> "From the beginning suits between citizens of different states, or involving federal questions, could neither be brought in the federal courts nor removed to them, unless the value of the matter in controversy was more than a specified amount. Cases involving lesser amounts have been left to be dealt with exclusively by state courts,

\* \* \*. Pursuant to this policy the jurisdiction of federal courts of first instance has been narrowed by successive acts of Congress, which have progressively increased the jurisdictional amount. The policy of the statute calls for its strict construction." Healy v. Ratta, 292 U.S. 263, 269–270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934).

Thus, the value of the "matter in controversy" must be measured not by the importance of principle involved, but by its monetary consequences to the parties to the litigation. Here we conclude that the Tribes have not met one of the two essential requirements of the statute. Accordingly, the judgment is reversed.