John FACTOR, Plaintiff,

v.

PENNINGTON PRESS, INC., an Ohio corporation, et al., Defendants.

No. 59 C 1961.

United States District Court
N. D. Illinois, E. D.

Dec. 23, 1964.

Frank J. McGarr, Chicago, Ill., for plaintiff.

Julius S. Cordell, Bernard H. Sokol, Charles J. Barnhill, Narcisse A. Brown and Wm. F. McNally, Howard P. Robinson and George W. McBurney, Sidley, Austin, Burgess & Smith, John Edward Dwork, Chicago, Ill., for defendants.

DECKER, District Judge.

This cause having come on for hearing on the defendants' motion to dismiss for want of jurisdiction over the subject matter of this case, on the ground that there is no diversity of citizenship between the plaintiff and the defendants, as required by 28 U.S.C. § 1332, and the Court, having considered the complaint, the motion to dismiss, affidavits submitted by the parties, briefs on the law and having heard evidence produced in open court by both parties and allowed oral argument by both parties, being fully informed in the premises, now finds as follows:

*Findings of Fact*

1. The issue in this case is whether John Factor, the plaintiff, was, as he alleges in the complaint, a citizen of the United Kingdom and a resident of the

State of California as of the date of filing the complaint. The plaintiff claims to be a citizen of the United Kingdom, and the Court finds that the defendants are all individual citizens of Illinois or corporations of Illinois or corporations with their principal places of business, or doing business, in Illinois.

2. Testimony was received in open court on this jurisdictional issue by the Court, sitting without a jury.

3. The plaintiff's sole claim, and the evidence he introduced in support of the claim, is that he was a citizen of the United Kingdom by virtue of the fact that he was born in Hull, England. The plaintiff never was naturalized a citizen of England or the United Kingdom or of any other country than the United States. (His naturalization in the United States occurred July 15, 1963, which was subsequent to the date of filing of the complaint herein.) The plaintiff's only claim to citizenship in the United Kingdom is that he was born in the United Kingdom.

4. The plaintiff introduced in evidence the following documentary evidence to sustain his claim that he was born in Hull, England:

A photostatic copy of a British passport which the plaintiff obtained in Canada in 1920;

An affidavit of one Solomon Schultz, allegedly made in 1926, in Britain, stating that Solomon Schultz knew of the plaintiff's birth in Hull, England;

An affidavit of the plaintiff's mother, Leah Factor, certified to by one Rose Factor in 1928, also stating that the plaintiff was born in Hull, England;

A non-contemporaneous certificate of the birth of one Jerome Factor, the plaintiff's oldest son, which is dated November 27, 1942, and purports to certify to the birth of Jerome Factor on November 16, 1913; which later certificate of birth states that the father's place of birth was Hull, England.

The plaintiff also offered in evidence certified copies of a petition for naturalization and of findings of fact and conclusions of law and recommendations of a naturalization examiner which became orders of the United States District Court of the Southern District of California when they were entered in 1963. These documents contain statements by the plaintiff that he was born in Hull, England, but they were not received in evidence.

5. The plaintiff testified that he was born in Hull, England, on October 8, 1892, and first entered the United States in 1905 or 1906 at the Port of Philadelphia. His last entry into the United States for naturalization purposes was at El Paso, Texas, December 3, 1930. The plaintiff further testified that his first application for first citizenship papers was made in 1917, and in this the plaintiff admitted he stated that he was born in Russia. Subsequently, the plaintiff testified he learned from his parents and brothers that he had been born in Hull, England, and he did not pursue his first application for naturalization because, he testified, he learned that he had misstated the place of his birth. On testimony as an adverse witness called by the defendants in this case, the plaintiff testified that he has been known by other names and that he has signed these names to the various official documents mentioned below. These names, in addition to John Factor, are: J. Factor, Jake Factor, Jacob John Factor, Yanko Factor, Jack Factor and John Jacob Factor. The plaintiff testified that he was one of nine or ten children born of his father's second marriage to his mother, Leah Factor. Plaintiff admitted that all eight of his full brothers and sisters were born in Russia, most of them being born in Lodz. The plaintiff testified that his father was as itinerant rabbi, who spent six or eight months in England where the plaintiff claims that he was born. The plaintiff admitted that in a prior sworn deposition he had stated that his father's sojourn in England was only for two or three months.

6. The plaintiff admitted making an application for a marriage license to one Bessie Schatz on August 7, 1911. He

admitted signing the application in the name of Jack Factor. This application, made under oath, stated his birth date as 1889 or 1890 and did not state the place of his birth. The plaintiff admitted making an application for a barber's license in the State of Illinois in 1912, which he signed as Jack Factor and in which he stated, under oath, that his birth date was 1889 or 1890 in Russia. Factor stated that, "I merely took it for granted where I was born," at the time he filed and signed this application.

7. The plaintiff stated that he had never signed nor had ever given anyone the information necessary to fill out a certificate of his son Jerome's birth in the State of Illinois. This certificate, which was admitted in evidence, bore the signature "Jack Factor," stated his birth date was 1891 or 1892 and his birth place Russia, but it was not made under oath. The certificate is dated November 16, 1913, and the plaintiff admitted that at that time he was under the impression that he was born in Russia and probably told that to his wife, Bessie Schatz.

8. The plaintiff admitted signing a declaration of intention to become a United States citizen under oath on February 27, 1917. The plaintiff signed this declaration in the name of Jacob Factor and stated that his birth date was December 15, 1892, in Zdunska, Russia. In this declaration, which was sworn to before the Clerk of the United States District Court for the Northern District of Illinois, he stated it was his intention to renounce allegiance to the Czar of Russia of whom he was then a subject.

9. The plaintiff admitted signing in the name of J. Factor a draft card for the United States Selective Service System during the First World War, under oath, on June 5, 1917. On this draft card, he stated his birth date was October 8, 1890, in Lodz, Russian Poland.

10. The plaintiff admitted signing under oath an application for a second marriage license in the State of New York in the name of Jacob Factor on February 6, 1925. In this application he stated that he was born in 1892 or 1893 in Chicago, Illinois. When he was asked what he hoped to accomplish by stating that he was born in Chicago, Illinois, in this appliaction, he stated, "Well, I was here on a visa, a short time visa, and I was hoping to get married immediately, and I was afraid that if I put down that I was born in England, I might have to wait a week or two weeks, or longer, I did not know."

11. A birth certificate of Alvin J. Factor, the youngest son of the plaintiff, was also received in evidence, signed by the Registrar of Chicago Lying-In Hospital, dated December 25, 1925. The plaintiff stated he was in London, England, at the time of this son's birth, and that he furnished no information on that certificate. The certificate stated that the father was Jack Factor and that he was born in 1892 in Chicago, Illinois.

12. A manifest of the ship S.S. Haverford was admitted in evidence. This manifest showed that the ship sailed from Liverpool, England, on March 7, 1906, and arrived at Philadelphia, Pennsylvania, on March 19, 22 or 26, 1906. The manifest states that Abraham J. Factor (the plaintiff's father), Leah Factor (the plaintiff's mother), Denah Factor (the plaintiff's sister), and Jacob Factor (the plaintiff) were on board as aliens. Although the plaintiff did not sign this manifest, and he stated that neither he nor his parents nor his sister could speak English at this time, when the plaintiff was asked by the Court how old he was in 1906 when he arrived in the Port of Philadelphia, he stated "about eleven, I believe." When the discrepancy between this statement and his claim that he was born in 1892 was pointed out to him, the plaintiff stated that he just could not remember things that occurred that long ago.

13. The only evidence supporting the plaintiff's claim that he was born in Hull, England, and therefore was a citizen of the United Kingdom at the time he filed his complaint, are his own self-serving statements made in the documents described above. The plaintiff admitted readily that he made misstate-

ments of facts in these documents to suit his convenience at the various times that the statements were made. His only explanation for the discrepancies as to his place of birth, which ranged from Lodz, Russia-Poland, to Zdunska, Russia, Hull, England, and Chicago, Illinois, was that at some time in 1918 or 1919, after taking out his first citizenship papers, his family informed him that he was not born in Russia, but rather that he was born in Hull, England.

14. Plaintiff testified that he wrote his brother, who also lived in Hull, England, in 1919, and that his brother sent him the affidavit of Solomon Schultz, referred to above. The plaintiff stated that after 1918 or 1919, he knew he was born in Hull, England, and so claimed whenever he was asked.

15. The plaintiff testified that the first time he ever stated to anyone that he was born in Hull, England, was about 1918 or 1919, but he never made that statement in writing or made a statement of record until he obtained a British passport in Canada in 1920.

It should be pointed out, parenthetically, that the plaintiff was not a citizen of Russia at the time of filing this complaint, because the Court finds that the law of Russia required that all persons who were subjects of Russia by virtue of being born of a Russian father under the reign of the Czar, and who left Russia prior to the 1917 Revolution, had to notify the Russian government of their intent to become citizens of the U.S.S.R. within certain stipulated periods of time. In Factor's case, since he was residing in the United States, it would have been necessary for him to have so notified the Russian government in 1933, after the United States and Russia established diplomatic relations. The evidence is clear that the plaintiff never took these steps.

16. The application for a second marriage license made on February 6, 1925, sworn to by the plaintiff, stated that he was born in Chicago, Illinois, in 1892 or 1893. This application was made long after the plaintiff testified that he knew he was born in Hull, England.

17. Since the plaintiff testified that it was difficult to remember events that occurred many years ago, and since he placed his reliance on statements his family made to him as to the place of his birth, plaintiff was questioned as to the order of birth of his brothers and sisters. The plaintiff testified that he was the youngest child in the family. He testified that the next oldest was Denah; he did not know when she was born, but he believed that she is either two or three years older than himself. Plaintiff also testified that he has one other brother, Frank, still living; he was unable to say when Frank was born, but thought he was perhaps four or five years older than the plaintiff.

18. I find that the plaintiff Factor was a wholly untrustworthy witness and that the frequent and repeated impeachment of his claim that he was born in Hull, England, makes it impossible to believe either his claim in Court that he was born in Hull, England, on October 8, 1892, or his statements made in the various documents summarized above to the same effect.

19. The plaintiff has failed to sustain his burden of proving that he was a citizen of the United Kingdom at the time of filing his complaint.

*Conclusions of Law*

1. The Court has jurisdiction over the parties to this action.

2. The plaintiff has failed to sustain his burden of proving that the Court has jurisdiction over the subject matter of this case in that plaintiff has failed to prove that diversity of citizenship exists between the plaintiff and the defendants.

3. The plaintiff has failed to prove that at the time of filing the complaint, he was a citizen of the United Kingdom, and therefore, the diversity jurisdiction of this Court does not attach to this case.

4. The plaintiff was at the time of filing the complaint a stateless person, and a stateless person is not a citizen of a state of the United States or of any foreign state for purposes of satisfying the diversity of citizenship requirements.

### Judgment Order

It is ordered and adjudged, on the basis of the foregoing Findings of Fact and Conclusions of Law, that the motion of the defendants to dismiss the complaint is hereby granted, and the complaint is hereby dismissed with prejudice, and the plaintiff is ordered to pay the costs of the defendants in this suit.