Eugene **TANZYMORE**, Appellant,

v.

**BETHLEHEM STEEL CORPORATION,**
Appellee,

v.

**YOUNG–POSEN, INC.,** Third-Party
Defendant.

No. 71–1250.

United States Court of Appeals,
Third Circuit.

Argued Feb. 17, 1972.

Decided March 29, 1972.

See also, D.C., 325 F.Supp. 895.

Renald Baratta, Easton, Pa., for appellant.

Robert H. Holland, Kolb, Holland, Antonelli & Heffner, Bethlehem, Pa., for appellee.

Before ADAMS, GIBBONS and JAMES ROSEN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Appellant Tanzymore filed a complaint in the District Court for the Eastern District of Pennsylvania seeking damages from Bethlehem Steel Corporation for personal injuries. The complaint alleges that Mr. Tanzymore is "a domiciliary of 7418 Lenwood Street, Apartment 3, City of Cleveland, State of Ohio," and that Bethlehem is a Delaware corporation with its principal place of business in the Eastern District of Pennsylvania. Bethlehem filed an answer, and took Mr. Tanzymore's deposition. When the deposition was filed Bethlehem moved to dismiss the action on the ground that the district court lacked jurisdiction because the controversy is not wholly between citizens of different states. No affidavits were filed by Mr. Tanzymore in opposition to the motion. The court considered the briefs filed by the parties, heard argument on the motion, and without holding an evidentiary hearing, on the basis of Mr. Tanzymore's deposition concluded that there was no diversity of citizenship between the parties and dismissed the complaint. In its opinion, 325 F. Supp. 891, the court stated:

"Both the deposition[s] taken of the plaintiff, and his work record [as dis-

closed therein], indicate[s] that he is at best a resident of Pennsylvania, and may, in fact, be a citizen of no state.

\* \* \* \* \* \*

This Court is unable to find that plaintiff is a citizen of the state of Ohio."

This appeal followed.[1] On appeal Mr. Tanzymore concedes, as he must, that determination of the underlying jurisdictional facts may be made by the court. Wetmore v. Rymer, 169 U.S. 115, 18 S.Ct. 293, 42 L.Ed. 682 (1898). Nor does he dispute that where a jurisdictional fact is traversed the burden of showing that the federal court has jurisdiction rests upon the plaintiff. Gibbs v. Buck, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939). He contends only that in a case in which the pleadings and depositions show a dispute as to the jurisdictional facts that dispute may not be resolved by the court without an evidentiary hearing. Mr. Tanzymore's deposition does contain the naked assertion that he intended at all times to remain an Ohio domiciliary, but virtually nothing else in the deposition is consistent with the conclusive assertion.[2] Never-

---

1. We are advised that a timely suit has been filed in a Pennsylvania court.

2. In his deposition Tanzymore testified as follows:

"EXAMINATION BY MR. HOLLAND [Bethlehem's Attorney]

N.T. 3 (10a)

Q. Assuming that it was in May or along about May of 1966 or '65 that you first went to work for Young & Posen. I would like you to tell me where you went to work for them.

A. Philadelphia, Pennsylvania, at the Gulf Oil Company.

N.T. 6 (13a)

Q. All right. Now, before you went to work for Young & Posen at the Gulf Oil plant in Philadelphia, where did you work?

A. I worked for Lachat Construction Company in Baltimore, Maryland— Lachat Steel Construction Company, Baltimore, Maryland.

\* \* \* \* \*

Q. What is your permanent home address now?

A. 307 East Fourth Street, Bethlehem, Pennsylvania.

N.T. 7 (14a)

Q. And what is 307 East Fourth Street: Is it an apartment or a house or a—

A. This is a lady got a house, and she rent me a room and helps me about, because I can't—I am unable to help myself.

Q. And your accommodations there, then, are a room?

A. Right.

Q. Do you take your meals with this landlady?

A. Up until she unable to cook for me. Now I have to eat in lunchrooms.

Q. How long have you lived at 307 East Fourth Street?

A. Umm, six months.

\* \* \* \* \*

A. 543 North New Street.

Q. That's in Bethlehem?

N.T. 8 (15a)

Q. Were you living at the American Hotel—

A. When I got hurt, correct.

Q. —when you were working at the Bethlehem Steel?

N.T. 9 (16a)

Q. Were all of these jobs that you did at Bethlehem Steel right after each other, or did you have assignments somewhere else in between?

A. We had assignment elsewhere. I went down into West Virginia, and then I had an assignment of staying at home until the other job got ready to be done.

N.T. 10 (17a)

A. Oh, I lived in Cleveland, Ohio, off and on, ever since '65. Off and on.

\* \* \* \* \*

Q. Then you are not registered to vote?

A. No.

\* \* \* \* \*

A. Well, hell, my license expired in—it must be, for my automobile, what the hell—'63.

N.T. 11 (18a)

Q. And at the time this accident occurred, you didn't own one?

A. Correct.

Q. Would I be correct in assuming that you haven't owned one since 1963?

A. Correct.

Q. Now, Mr. Tanzymore, at the place where you presently live on 307 East Fourth Street, do you own furnishings in that house?

A. Yeah. I bought my bed, tables, chairs. I have to sleep in a hospital bed, due to my discs in my back resting on the nerves of my spine.

theless, he contends, it was improper to resolve the disputed domicile issue against him without giving him the opportunity to testify in an evidentiary hearing.

Q. Do you get mail at that address?
A. Yes, I do.
Q. The postmen delivers the mail to 307—
A. No, he deliver to the front house. I live in the back house.
N.T. 12 (19a)
Q. Well, what was that address?
A. 543—
Q. —North New. Did you own any of the furnishings at that residence?
A. No, I didn't own any. I had the same furniture I have now. I was buying the same stuff that I am buying now.
Q. And did you get your mail at that address also?
A. I did so.
N.T. 13 (20a)
Q. Do you have any furnishings—beds, chairs, sofas, television set, or anything like that—
A. I got a television set, I got a hospital bed. I got a stand, I got a table and five chairs, I got three sheets, I got one blanket, I got two pillows, I got a water glass that I put water aside of the bed on, I got a flower and a pot, about yea long and yea high (demonstrating). I have three suits of clothes, I got a dozen pocket handkerchiefs, a dozen pair of underwears, I got six pair of socks, and I have three neckties.

&ast; &ast; &ast; &ast; &ast;

Q. Do you own any things like these— clothing or furniture—that you keep anywhere else?

&ast; &ast; &ast; &ast; &ast;

A. No, I don't. Not now I don't.
Q. When was the last time that you did?
A. 1967.
N.T. 14 (21a)
Q. Mr. Tanzymore, do you own any real estate?
A. No, I don't.
Q. Any land?
A. No.
Q. Lots?
N.T. 15 (22a)
Q. You don't maintain any bank accounts in any other cities?
A. No.
Q. You don't have a safe deposit box in any bank anywhere?
A. No, I don't
Q. Do you maintain any memberships in any clubs any places other than Bethlehem?
A. No, I don't.

■■ Appellant's argument confuses the court's role in deciding a motion for summary judgment under Fed.R.Civ.P. 56 with its role in making a jurisdictional determination pursuant to 28 U.

EXAMINATION BY MR. BARATTA [Mr. Tanzymore's attorney]:
N.T. 47 (54a)
Q. Now, the address that you gave us in Cleveland, was that a house?
A. Yes. Apartment house.
Q. Did you own that house?
A. No. Rent. I rented a room there, with another lady and her—you know, her family.
Q. Did you own any furniture that was in that particular apartment?
A. No. All that was furnished. That house was a furnished house.
Q. A furnished apartment?
A. Yes.
Q. Did you have a lease?
A. No. Just rent weekly—monthly.
N.T. 48 (55a)
A. My operator license. They expired in 1963.
Q. All right. What state issued that license?
A. Seattle, Washington.
Q. At the time of your accident did you have any bank accounts in Cleveland, Ohio?
A. No. At the time of my accident, no.
Q. At the time of your accident or immediately before the accident, and immediately after the accident did you receive any mail at the Cleveland address that you gave us?
A. No. No.
N.T. 49 (56a)
A. I haven't been back to Cleveland, Ohio, since I left."
EXAMINATION BY MR. HOLLAND:
N.T. 51 (58a)
Q. But you have since made Bethlehem your home?
A. I made Bethlehem my home on the— under my doctor, I made Pennsylvania my home, under my doctors throughout Pennsylvania. When I say 'throughout Pennsylvania' I mean I may be under this doctor if I felt like I wasn't going to get well, like I did before, I'd go somewhere where I can. Due to that, due to all the business of my accident—the same as this meeting here, I can't be in Cleveland and attend your meeting here. All of this stuff comes under the heading of my accident, that I have to stay here until somebody do something about me, other than God himself."

S.C. § 1359 [3] and Fed.R.Civ.P. 12(h) (3).[4] Since 1875, when the predecessor to 28 U.S.C. § 1359 was first enacted, when a question of federal jurisdiction is raised either by a party as here, or by the court on its own motion, the court may inquire, by affidavits or otherwise, into the facts as they exist. Wetmore v. Rymer, 169 U.S. at 120–121, 18 S.Ct. 293, 42 L.Ed. 682; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 184–190, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); KVOS, Inc. v. Associated Press, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936); Gibbs v. Buck, 307 U.S. at 71, 72, 59 S.Ct. 725, 83 L.Ed. 1111; Land v. Dollar, 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). In Wetmore v. Rymer, the Court wrote:

> "But the questions might arise in such a shape that the court might consider and determine them without the intervention of a jury. And it would appear to have been the intention of congress to leave the mode of raising and trying such issues to the discretion of the trial judge."

169 U.S. at 121, 18 S.Ct. at 296.

More recently in Gibbs v. Buck, the Court wrote:

> "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court."

307 U.S. at 71–72, 59 S.Ct. at 729.

Shortly after our decision in McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968), cert. denied sub nom. Fritzinger v. Weist, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969) in which we directed that the district courts make inquiry into diversity manufactured by the appointment of out of state guardians, we had occasion to suggest a standard for the exercise of discretion in the method of determining the jurisdictional issue. In Groh v. Brooks, 421 F.2d 589, 594 (3d Cir. 1970) Judge Stahl wrote:

> "If a plaintiff whose assertion of federal jurisdiction is challenged by a motion to dismiss fails to bring forth any factual material to support his claim to jurisdiction, then dismissal may properly be granted against him. However, it should clearly appear from the record that plaintiff has had an opportunity to present facts, either by way of affidavit or in an evidentiary hearing, in support of his position that diversity was not manufactured." (footnotes omitted)

Here the attorney for Tanzymore had an opportunity to cross examine him at the deposition. He did so. There was an opportunity, unavailed of, to file affidavits in opposition to the motion to dismiss. The district court, having discretion as to the procedure to be followed in making its jurisdictional determination, exercised that discretion reasonably in deciding the motion on the basis of the deposition. Had parts of the deposition tended to support Mr. Tanzymore's conclusory statement of domicile and had he then requested an evidentiary hearing to resolve the conflict a different procedure might have been appropriate.

*Compare* Seideman v. Hamilton, 275 F.2d 224 (3d Cir. 1960), in which we approved the procedure of the court's hearing evidence on the issue of diversity and Shahmoon Industries Inc. v. Imperato, 338 F.2d 449 (3d Cir. 1964), in which this court sua sponte returned the case to the district court to enlarge the record on a diversity issue by taking additional evidence. While these cases teach that an evidentiary hearing may be appropriate they do not hold that

3. "§ 1359. Parties collusively joined or made

A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

4. "(h) Waiver or Preservation of Certain Defenses.

\* \* \* \* \*

(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

such a hearing is always required so long as the court has afforded the plaintiff notice and a fair opportunity to be heard. We will not set aside its reasonable exercise of discretion as to the mode of determination of the jurisdictional facts. A different rule applies, of course, where a summary disposition reaches the merits of the claim rather than the jurisdiction of the court. *Compare* Fed.R.Civ. 56(c), 65(a).

Mr. Tanzymore also contends that the district court decision is a holding which accepts the doctrine of cases such as Pannill v. Roanoke Times Co., 252 F. 910 (W.D.Va.1918), which hold that a person may be "stateless" and that such a stateless person cannot create diversity of citizenship for purposes of 28 U.S. C. § 1332. *See also* Clapp v. Stearns & Co., 229 F.Supp. 305 (S.D.N.Y.1964); Factor v. Pennington Press, Inc., 238 F. Supp. 630 (N.D.Ill.1964). He urges that we reject this doctrine.

■ The district court did speculate that Mr. Tanzymore may be a stateless person, but this is not its holding. The plaintiff had the burden of alleging a basis for federal jurisdiction. Fed.R. Civ.P. 8(a) (1). When the jurisdictional allegations were traversed he had the burden of supporting those allegations. McNutt v. General Motors Acceptance Corp., 298 U.S. at 182–189, 56 S.Ct. 780, 80 L.Ed. 1135; KVOS v. Associated Press, 299 U.S. at 276–277, 57 S.Ct. 197, 81 L.Ed. 183; Nelson v. Keefer, 451 F. 2d 289 (3d Cir. 1971). The holding was only that Mr. Tanzymore failed to meet the burden of establishing that he was, as he alleged, a citizen of Ohio.[5] Since he had the burden of establishing the basis of federal jurisdiction which he alleged, and failed to carry that bur-

den, we need inquire no further for it was his obligation, not that of the court, to establish his citizenship.

The judgment of the district court dismissing the complaint for want of jurisdiction will be affirmed.

---

5. The complaint actually alleges only that Mr. Tanzymore is "a domiciliary" of Ohio: "A naked averment that one is a 'domiciliary' or a 'resident' of a state is insufficient. The statute requires that the averment be that one is a 'citizen' of a state. The whole record, however, may be looked to, for the purpose of curing a defective averment of citizenship, . . . and if the requisite citizenship, is anywhere expressly averred in the record, or facts are therein stated which in legal intendment constitute such allegation, that is sufficient.'" Sun Printing & Publishing Ass'n. v. Edwards, 194 U.S. 377, 382, 24 S.Ct. 696, 697, 48 L.Ed. 1027 (1904).